342 A.2d 84

**COMMONWEALTH of Pennsylvania**

v.

**George D. BROWN, Appellant.**

Supreme Court of Pennsylvania.

Argued May 2, 1974.

Decided July 7, 1975.

580

Nolan N. Atkinson, Jr., Zack, Myers & Atkinson, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., Steven H. Goldblatt, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

POMEROY, Justice.

Appellant was convicted by a jury of murder in the first degree for the death by shooting of one William Bogier on December 9, 1969. Post-trial motions were denied by a court en banc, one judge dissenting and a sentence of life imprisonment, imposed.[1] This appeal followed.

1. The jury recommended that Brown be sentenced to death. After denial of post-trial motions, however, Brown sought and ob-

584

Appellant has advanced nine assignments of error. Because we have determined that none of the errors alleged requires the granting of a new trial, we will affirm the judgment of sentence.[2]

■ The Commonwealth's evidence established that on the night of December 8, 1969, Brown and another robbed a bar in Philadelphia. As they were running from the bar after the hold-up they were observed by a police officer, who pursued them and captured the co-felon. The defendant escaped arrest by entering a nearby house. Once inside the building, he broke into the second floor apartment then being occupied by a Mrs. Margaret Mitchell and her eleven year old son, Ardies, who were awakened when Brown burst through the door. At gunpoint, the appellant informed the Mitchells that he had just robbed a bar and that he merely wanted to hide out in the house "until everything would be cool."

Learning from the Mitchells that there was a third floor tenant, William Bogier, Brown forced the Mitchells to accompany him to Bogier's apartment. Brown then confronted Bogier and demanded money from him. Bogier said that what money he had was in his trousers pocket, whereupon Brown ordered the Mitchell boy to search Bogier's clothing. The boy found $5 which he turned over to the defendant. Dissatisfied with this small sum, Brown shot Bogier once in the chest.

This accomplished, Brown forced the Mitchells and the wounded Bogier to go with him from floor to floor while

tained a writ of prohibition in this Court preventing the imposition of the death sentence in light of the decision of the Supreme Court of the United States in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

2. Although the sufficiency of the evidence was not challenged, it is the duty of this Court under the Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187 in cases of murder in the first degree to review the entire record to determine whether the evidence is sufficient to establish all the elements of that offense. Our review in this case has satisfied us that the evidence was so sufficient.

Brown had Ardies Mitchell ransack the house for more money. The search turned up approximately $77 found in Mrs. Mitchell's pocketbook and in two jars of pennies. The group then returned, on Brown's order, to the third floor, where once again he compelled Ardies Mitchell to search Bogier's clothing. This time approximately $50 or $60 was found in a jacket. Declaring that he had known that Bogier had had more money than had been found previously, Brown shot Bogier five more times. These bullets struck the victim in the head, chest and thigh, and proved fatal.

The mad rampage continued with Brown forcing the Mitchells downstairs in a renewed search for money. When no more was found, the Mitchell boy was trussed up and placed in the bathroom. Brown then proceeded to rape Mrs. Mitchell, after which he shot her in the head. Returning to the boy, Brown shot him three times in the head. Miraculously neither the boy nor his mother died from their wounds; both were able to testify at trial to the above occurrences.

Following the orgy of violence at the Mitchell house Brown fled to the home of his girl friend and the mother of his child, one Stella Mae Robinson. At trial, Miss Robinson testified that appellant gave her a gun, which she soon threw away, telling her at the same time that he had just shot three people on Ginnodo Street. He described them as a little boy, a lady and a man. Two months later Brown was arrested for the murder of Bogier and the related crimes.

Appellant's first allegation of error concerns the refusal of the trial court to grant his motion to quash the indictment. That motion was based on the fact that appellant at the time of his preliminary hearing on May 6, 1970 had been found to be incompetent to stand trial on another unrelated offense, and had been committed to a mental institution. It is contended that permitting a hearing under those circumstances deprived the accused

of due process of law, and also that the hearing violated Section 409 of the Pennsylvania Mental Health and Mental Retardation Act of 1966.[3] Like the court below, we conclude that the appellant has waived his right to assert this alleged impropriety in the proceedings against him; we therefore do not reach the merits of the claim.

As noted above, the preliminary hearing was held on May 6, 1970. No motion to quash the indictment was filed until April 12, 1971, the very day that trial was scheduled to commence. Jury selection began on April 14, 1971 and the jury was sworn on April 21, 1971. Whichever of these two dates is considered to be the one on which the trial began, it is clear that appellant's motion was untimely under our rule of criminal procedure governing the time for the filing of applications for pretrial relief,[4] of which a motion to quash is one.

The motion to quash fails to set forth any reason which might excuse its untimeliness. At the time the motion was submitted to the court, however, defense counsel stated that the motion was filed as soon as he became aware that there were grounds for it.[5] Defendant's other counsel,[6] however, was present at the prelimi-

---

3. Section 409(a) provides: "Whenever a person who has been charged with crime is committed in accordance with either section 407 or 408 of this act, the criminal proceedings against him shall be stayed for the duration of commitment, provided however, that the Attorney for the Commonwealth may submit indictments to the grand jury involving such charge." Act of October 20, 1966, Special Sess. No. 3, P.L. 96, art. IV, § 409, 50 P.S. § 4409.

4. Pa.R.Cr.P. 305, 19 P.S. Appendix (Supp.1974–75), provides in pertinent part: "no pretrial application shall be considered if made less than ten days before trial unless opportunity therefor did not exist or the defendant, or his attorney was not aware of the grounds for the application."

5. It is to be noted that neither in the motion itself nor at oral argument was the applicability of Section 409 of the Mental Health and Mental Retardation Act specifically argued. Apparently that particular argument was raised for the first time on post-trial motions.

6. The appellant was represented at trial by two counsel.

nary hearing and there specifically objected to the hearing going forward on the ground that it had been determined that the defendant was not able to cooperate with counsel and was incompetent to stand trial. It is thus apparent that at least one of the defendant's trial counsel was aware of defendant's mental condition, if not of his commitment, at the time of the preliminary hearing. The eleven month delay in presenting the motion to quash on the ground of defendant's mental state cannot, therefore, be excused for want of knowledge concerning it.

Second, appellant claims as error the refusal of the trial court to grant his motion for a bill of particulars. The motion was denominated a "Petition for Bill of Particulars and Examination of Evidence," but its text indicates that in reality it was a motion for pretrial discovery. As such, its consideration must be governed by Rule 310 of our rules of criminal procedure, 19 P.S. Appendix (Supp.1974–75). That rule limits pretrial discovery to the written statements and confessions of the defendant himself unless "exceptional circumstances and compelling reasons" are shown warranting additional discovery. Appellant's petition requested virtually all of the evidence gathered by the Commonwealth in connection with this case, but it contained no showing of exceptional circumstances and compelling reasons for such extensive discovery. The motion was properly denied.[7]

7. On appeal to this Court, it is now argued that the defendant's alleged marginal competence constitutes the "exceptional circumstances" required by the rule. Furthermore, appellant presses only two of his requests for discovery which he contends he should have been granted: (1) the names and addresses of the Commonwealth's witnesses; and (2) a summary of the police activity in connection with this case. Putting aside the question whether or not there were in fact exceptional circumstances (we note that immediately prior to trial, defense counsel informed the court that there would be no challenge to defendant's competency to stand trial), we fail to see how appellant was prejudiced by the denial of these requests.

Appellant contended that he needed the names of the witnesses for the purposes of the *voir dire* in order to insure the impartiali-

Appellant next contends that the trial court erred in denying his blanket motion to suppress without holding a hearing on the motion. The court denied the motion because it failed to comply with Pa.R.Cr.P. 323(d) requiring that motions to suppress contain, *inter alia*, the particular facts in support of the motion. Defense counsel gave as the reason for the failure to include specific facts the lack of cooperation by the defendant.

The dissenting judge on the court en banc below dissented on the ground that appellant should have been afforded the opportunity to amend his motion in order to comply with the rule, an argument now pressed by appellant. The Commonwealth, on the other hand, argues that the motion was properly dismissed even without a hearing, relying on the decision of this Court in *Commonwealth v. Turra*, 442 Pa. 192, 275 A.2d 96 (1971). We there stated, "it is clear that the motion to suppress did not conform to the requirements of Rule 323(d) of the Pennsylvania Rules of Criminal Procedure, and it was error for the court below to consider it or direct a hearing thereon." *Id.* at 195, 275 A.2d at 97 (footnote omitted). Cf. *Commonwealth v. Pearson*, 450 Pa. 467, 473, 303 A.2d 481 (1973). Appellant suggests that *Turra* actually supports the view that he was entitled to amend because our mandate in that case permitted the appellant to file a motion to suppress that did comply with the rules of criminal procedure. *Id.* at 197, 275 A.

ty of the jury panel. As conceded in appellant's brief, however, the names of the Commonwealth's witnesses were read to the venire panel by the prosecutor, who then asked if any of the potential jurors knew any of the witnesses.

As to the need for a summary of the police actions, it is claimed that this was necessary because counsel had no other way of learning of a line-up in which the defendant participated and at which he was identified as the slayer by Mrs. Mitchell. The fact that Mrs. Mitchell had identified Brown at a police station line-up, however, had been brought out during her cross-examination at the preliminary hearing on May 6, 1970, almost one year prior to trial.

2d at 98. See also *Commonwealth v. Hall,* 451 Pa. 201, 302 A.2d 342 (1973).

██ Even assuming, however, that appellant was entitled to amend his motion to suppress and to a hearing on that motion, we are unable to conclude that appellant was prejudiced by the failure of the trial court to allow amendment or conduct a hearing. Appellant now informs us that the evidence which he principally sought to suppress was the identification testimony given by Mrs. Mitchell at trial relating to an out-of-court identification made by her, and asserts that he was denied his right to counsel at that identification. *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974).[8] Testimony concerning this identification, however, was brought out not by the Commonwealth but by defense counsel on cross-examination. Appellant may not now complain of the failure to suppress evidence which his own counsel elicited at trial.

 Appellant's further argument that the in-court identification by Mrs. Mitchell may have been tainted by the allegedly uncounselled out-of-court identification must also fail. An in-court identification following an illegal out-of-court identification is admissible into evidence if, considering the totality of circumstances, it is determined that the in-court identification had an independent origin " 'sufficiently distinguishable to be purged of the primary taint.' " *United States v. Wade,* 388 U.S. 218, 241, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149, 1165 (1967). In the instant case Mrs. Mitchell had an opportunity to observe the defendant at close range for between one and two hours on the morning of the slaying. This fact alone clearly establishes an independent origin for her in-court identification, to wit, her observations at the time of the occurrence. *Commonwealth v.*

8. The Commonwealth in its brief disputes the contention that the line-up was uncounselled.

*Hall,* 456 Pa. 243, 317 A.2d 891 (1974); *Commonwealth v. Mackey,* 447 Pa. 32, 288 A.2d 778 (1972); *Commonwealth v. Rankin,* 441 Pa. 401, 272 A.2d 886 (1971).

Appellant's fourth claim relates to the exclusion of potential jurors who expressed total opposition to the death penalty. It is contended that the exclusion of such jurors, which exclusion in no way violated the standards set forth in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), resulted in a jury which was prosecution-prone. The United States Supreme Court in *Witherspoon* itself specifically rejected such a claim, 391 U.S. at 516, 88 S.Ct. at 1774, 20 L.Ed. 2d at 782. So also has this Court. *Commonwealth v. Kenney,* 449 Pa. 562, 569, 297 A.2d 794 (1972); *Commonwealth v. Speller,* 445 Pa. 32, 282 A.2d 26 (1971); *Commonwealth v. Roach,* 444 Pa. 368, 282 A.2d 382 (1971).[9]

Next, appellant objects to the admission at trial of evidence relating to the events which led up to the killing of Bogier, and also the sequel to the killing. The argument is that such evidence, concerning as it did other crimes allegedly committed by appellant, was admitted for the sole purpose of showing appellant's criminal disposition. We do not agree that such evidence was inadmissible. While it is true that generally evidence of crimes other than the one for which the defendant is being tried is not admissible, there are certain well-defined exceptions to that rule. Among these is the "same transaction" or "res gestae" exception. McCormick, Evidence, § 190 at 448 (2d ed. 1972). In *Commonwealth v. Williams,* 307 Pa. 134, 160 A. 602 (1932), this Court

9. Appellant objects to the fact that he was not permitted to question prospective jurors concerning whether they believed that in light of the fact of appellant's arrest and being brought to trial, he had done "something wrong." The court properly refused to allow the question because of the way that it was phrased and adequately covered the same subject matter by its own questions.

spelled out that exception, saying that such evidence is admissible where "such prior conviction or criminal act formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts." *Id.* at 148, 160 A. at 607. See also *Commonwealth v. Ross*, 413 Pa. 35, 195 A.2d 81 (1963); *Commonwealth v. Wable*, 382 Pa. 80, 84, 114 A.2d 334, 336 (1955). We believe that the evidence of the other events, sordid as they were, was admissible under this exception because they were part and parcel of the violent rampage which resulted in the death of William Bogier; they were necessary to complete the picture of the day in question, not to prove Brown's criminal disposition in general. No error was committed in permitting the full story, of which the murder was an integral part, to be told.

Appellant's sixth assignment of error relates to the admission into evidence of testimony identifying the green army jacket worn by the appellant on the day of the homicide. That testimony was elicited on re-direct examination of Stella Mae Robinson, the defendant's girl friend, who was a Commonwealth witness. The error, it is argued, was in allowing this re-direct testimony, since it went beyond the scope of cross-examination. This claim must fail. It is clear that a trial judge has wide discretion to vary the normal order of proof and may permit a party to bring out on re-direct examination relevant evidence which inadvertently the party failed to bring out on direct examination. McCormick, *supra*, § 32 at 64; 98 C.J.S. Witnesses § 419. We are satisfied that there was no abuse of discretion in this case. See also *Commonwealth v. Collins*, 440 Pa. 368, 269 A.2d 882 (1970); *Commonwealth v. Padgett*, 428 Pa. 229, 237 A.2d 209 (1968).

The seventh argument advanced by the appellant also relates to the testimony of Miss Robinson. He

claims that certain of her testimony relating to the gun which she had received from the defendant was coerced because the trial court refused to apprise her of her constitutional rights relative to the Fifth Amendment privilege against self-incrimination. Whether this be error or not, "it is settled law that appellant lacks standing to assert the alleged deprivation of another's constitutional rights." *Commonwealth v. Butler*, 448 Pa. 128, 131, 291 A.2d 89, 90 (1972); see also *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590 (1973).

Appellant next argues that the trial court erred in refusing to admit into evidence written psychiatric reports for the purpose of attempting to prove appellant's alleged insanity. None of the psychiatrists who authored the reports was presented as a witness. The Commonwealth objected to the admission of the reports and the trial court sustained the objection on the ground that they were hearsay. We agree. McCormick, *supra*, § 248 at 588.

Finally, appellant has raised several objections to the trial judge's charge. At the conclusion of the charge, however, appellant specifically excepted only to the refusal of the court to give two of his proposed points for charge. We will therefore limit our consideration to propriety of those two rulings. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

(1) It appears from the record that on several occasions during the trial appellant interrupted the proceedings with comments directed at witnesses and his own lawyers. Appellant contends that instructions were required to caution the jury that they were not to consider such outbursts in making their determination of guilt, and that it was error to refuse the request so to charge. No authority is given for such a proposition, nor do we know of any.

The trial court did charge that the jury could consider the demeanor of witnesses generally. Such a charge was correct and no additional charge singling out the demeanor of the defendant was necessary.

 (2) The trial court also declined to charge on the issue of Brown's insanity. Appellant claims that this issue was introduced through appellant's own testimony at trial. In *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974), we made reference to how the issue of insanity may be raised: "There must be evidence in the case from whatever source that he did not know the nature and quality of his act or that he did not know that it was wrong." *Id.* at 483, 321 A.2d at 632. See also *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974). Our examination of the record satisfies us that, measured by this standard, the issue of insanity was not presented by appellant's testimony. While that testimony was frequently rambling and incoherent, it did not in any way demonstrate insanity as defined above. Accordingly, the point was properly refused.

Judgment of sentence affirmed.

NIX and MANDERINO, JJ., concur in the result.

ROBERTS, J., filed a concurring opinion.

ROBERTS, Justice (concurring).

I am unable to agree that "generally evidence of crimes other than the one for which the defendant is being tried is not admissible, [with] certain well-defined exceptions . . . ." *Ante* at 90. The traditional "rule" of exclusion is so riddled with vague and overlapping "exceptions" that it would be more enlightening and more candid to say that the "exceptions" have become the rule and the traditional "rule" is an exception.

Therefore, in my view, " '[e]vidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime.' " *Commonwealth v. Boykin*, 450 Pa. 25, 33, 298 A.2d 258, 262 (1972) (concurring opinion of Roberts, J., joined by Jones, C. J.) ; accord, Fed.R.Evid. 404(b).

However, evidence of prior offenses is subject, as is all relevant evidence, to exclusion if its probative value is outweighed by "the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy." McCormick's Handbook of the Law of Evidence § 185, at 438–39 (2d ed. E. Cleary 1972) (footnote omitted). Accord, Fed.R.Evid. 403. Furthermore, in my view, if such evidence is admitted, the defendant is entitled upon request to a limiting instruction charging the jury that it is not permitted to draw the inference from the evidence of other offenses that the defendant by character was predisposed to commit the crime charged. See 1 J. Wigmore, Evidence § 13, at 300–01 (3d ed. 1940) ; McCormick, supra § 59, at 135–36.

In this case, the evidence of the other crimes committed by appellant was clearly relevant for purposes other than to show his propensity or disposition to murder William Bogier. Any account of the murder of Bogier that did not include appellant's other criminal acts would be incomplete and confusing. Therefore, I conclude that the probative value of placing before the jury the "whole story," including appellant's other crimes, outweighed the risk of prejudice, or at least the trial court could reasonably have so concluded. Appellant did not request a limiting instruction, nor did he specifically object to the absence of such an instruction from the court's charge. See Pa.R.Crim.P. 1119(b) ; cf. *Commonwealth v. Johnson*, 457 Pa. 554, 559, 327 A.2d 632, 635 (1974). Accordingly, I agree that appellant's contention that the ad-

mission of the evidence of his other offenses was reversible error is without merit.

Because I agree that appellant's other claims are either without merit or not preserved for appellate review, I concur in the result.