**UNITED STATES of America**

v.

**Daniel E. SNEAD and Arthur V. Snead.**

**Crim. No. 76–503.**

United States District Court,
E. D. Pennsylvania.

March 27, 1978.

1322

David R. Strawbridge, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

David H. Kubert, Philadelphia, Pa., for Arthur Snead.

Nicholas J. Lisi, Solo, Padova & Lisi, Philadelphia, Pa., for Daniel Snead.

## OPINION

FOGEL, District Judge.

Defendants Daniel Snead and Arthur Snead were indicted on November 30, 1976, charged with four counts of aiding and abetting bank robbery, in violation of 18 U.S.C. § 2113 and one count of conspiracy, in violation of 18 U.S.C. § 371. They were tried before this court and a jury and convicted on all counts on January 19, 1977. Counsel for both Daniel and Arthur Snead filed timely Motions for a New Trial and Judgment of Acquittal, alleging a variety of errors. Additionally, counsel for both defendants have filed Motions for a New Trial on the Basis of Newly Discovered Evidence. We denied all motions by Order dated September 16, 1977. The matter has now been appealed; this opinion sets forth the reasons for our action.

## I. ISSUES COMMON TO BOTH DANIEL AND ARTHUR SNEAD

### A. SEVERANCE

Prior to trial, both Daniel and Arthur Snead (hereinafter Daniel and Arthur) filed motions for separate trials. Daniel based his motion on the belief that a government witness, one Michael McNamee, would testify that Arthur had made a threat upon McNamee's life, thereby inculpating him, (Daniel); Arthur based his motion upon the belief that another government witness, one Sam Doman, would testify to having been hired by Daniel to kill McNamee, thus inculpating him, (Arthur). Arthur argued additionally that evidence concerning an alleged homosexual relationship between Daniel and McNamee, which he anticipated would be introduced at the trial, although not directed toward him, would nevertheless be prejudicial to him at a joint trial. We denied both motions by Order of January 5, 1977.

*United States v. Dansker*, 537 F.2d 40 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), sets forth the criteria that govern disposition of severance motions; that opinion states the following in pertinent part:

A motion for severance is addressed to the sound discretion of the court.

\* \* \* \* \* \*

A defendant is not entitled to a severance merely because the evidence against a co-defendant is more damaging than against him. If that were the case, a joint trial could rarely be held. Rather, in determining whether disparate proofs require a severance, the proper inquiry is whether the evidence is such that the jury cannot be expected to compartmentalize it and then consider it for its proper

purposes. *United States v. DeLarosa*, 3 Cir., 450 F.2d 1057 at 1065.

537 F.2d at 61–62.

Explicit in Arthur's motion, and implicit in Daniel's motion, is the notion that the jury could not independently "compartmentalize" the evidence as to each of them because they are brothers. *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), presented substantially the same contention as that advanced by defendants in this case; in *Opper*, the defendant contended that he had been prejudiced by possible confusion among the jurors as to statements made by co-defendant Hollifield. Rejecting this argument, the Supreme Court stated:

> To say that the jury might have been confused amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict.

348 U.S. at 95, 75 S.Ct. at 165. In view of the careful instructions given the jury in the instant case,[1] we cannot yield to the "unfounded speculation" that the jury confused the evidence to the prejudice of one or both of the defendants.

### B. REFERENCE TO BANK ROBBERIES GENERALLY

■ Both defendants also contend that certain remarks of the Assistant United States Attorney in his opening statement, and testimony by other government witnesses, with respect to instruction of co-conspirators Crompton and McNamee by the defendants in the "art" of robbing banks was prejudicial. The government was not permitted to introduce evidence pertaining to other bank robberies generally; however, evidence was permitted with respect to planning, but only as it tended *to show an overall plan* and *modus operandi* relating to the specific subject of the indictment.

Permitting evidence of this nature was recently approved in this Circuit in *Dansk-*er, supra, in which the trial court limited the testimony of a key government witness "to describ[ing] the mechanics of their [defendants'] scheme through four illustrative examples." 537 F.2d at 58. Because of the repeated admonitions by the trial court of the limited purpose for which the evidence would be admitted, and the very careful instructions to the jury, the Third Circuit found no abuse of the trial court's "considerable discretion in permitting the introduction of this evidence." *Id*.

We feel that the instructions given to the jury in this case more than adequately protected defendants from any prejudicial effect the remarks and testimony might have had.[2]

### C. CROMPTON INCOMPETENCY

■ Defendants contend that co-defendant, Gary Crompton's testimony should not have been permitted because Crompton was under the influence of alcohol and/or drugs at the time the crimes were committed, and had only minimal recall of the pertinent events. We held a competency hearing out of the presence of the jury.[3] Crompton freely admitted having consumed some alcohol on the day of the crime, but had a good recall of the events; he also freely admitted those things he could not recall. We determined that Crompton was competent to testify and that any questions regarding the accuracy of his recall was an issue for the jury in connection with its evaluation of Crompton's credibility, and not one of admissability.

### D. CROMPTON—LIMITATION ON CROSS EXAMINATION

■ Both defendants also contend we erred in not permitting cross-examination of Crompton concerning his prior convictions. Crompton was convicted of illegal use of solvents, 18 Pa.C.S.A. § 7303. This offense is classified as a third degree misde-

---

1. Notes of Testimony, January 19, 1977, pp. 11–7, 11–9, 11–85 to 11–86.

2. Notes of Testimony, January 19, 1977, pp. 11–3 to 11–9, 11–11 to 11–12.

3. Notes of Testimony, January 13, 1977, pp. 63–75.

meanor, punishable by a maximum of one year incarceration. It is not a crime punishable by death, or imprisonment for more than one year, or involving dishonesty or the making of false statements. Therefore, it is not the type of offense contemplated by Federal Rule of Evidence 609(a) as appropriate for impeachment purposes. Thus, the proposed cross-examination was properly denied.

### E. REMOVAL OF JUROR—DONALD GEMMILL

■ During the course of the trial, F.B.I. Agent William Thees was discussing the case in the elevator with another agent noting that the case was going well and that it looked like the jury had already made up its mind. Then Thees noticed that one of the jurors, Donald Gemmill, was in the same elevator car. The Assistant United States Attorney trying the case immediately brought this matter to the Court's attention. Mr. Gemmill was examined by the Court out of the presence of the other jurors.[4] He testified that he had seen Agent Thees talking with an acquaintance in the elevator, but had not heard anything that was said. We cautioned him not to say anything about the incident to the other jurors and allowed him to resume his jury service. In light of Mr. Gemmill's responses to the questions put to him concerning the incident, it was entirely appropriate to permit him to continue to serve as a juror.

### F. FDIC INSURANCE—JURISDICTION

■ Defendants also contend that we lack jurisdiction over this action, since the F.D.I.C. did not insure losses sustained by the bank as a result of the robbery. The fallacy in this contention is best exposed by the following statement:

[I]t is irrelevant that the bank was not insured against burglary. The statute

[18 U.S.C. § 2113(a)] is applicable to any bank insured by the F.D.I.C. and does not specify that it be insured against burglary.

*Roberts v. United States*, 472 F.2d 1195, 1196 (5th Cir. 1973).

### G. SAM DOMAN TESTIMONY

■ Defendants objected to the admissability of the testimony of Sam Doman, specifically that testimony which concerned an alleged "contract" between Doman and Daniel Snead to kill Michael McNamee. Arthur Snead objects on the ground that the testimony was not relevant to the charges against him, and as such, he claims that this testimony was highly prejudicial to him. Daniel Snead contends that the evidence was not probative and also claims it was highly prejudicial.

This argument is nothing more than a reiteration of the severance argument which we rejected before trial and reject now. *Dansker, supra.* This testimony obviously had no relation to Arthur Snead and the jury was so instructed.[5] This testimony was clearly relevant and probative with respect to Daniel Snead: *FIRST*, it demonstrated a consciousness of guilt—i.e., Daniel Snead hired Doman to kill McNamee because he thought McNamee would testify against him; and *SECOND*, it corroborated McNamee's testimony as to why he chose to testify (the threat to his life) and refuted the defense theory that he only chose to testify because he was offered immunity.[6]

### H. MICHAEL McNAMEE—UNRESPONSIVE ANSWERS ON DIRECT EXAMINATION

■ The essence of this ground for a new trial is that the witness McNamee persisted, on direct examination, in making references to multiple bank robberies:

Q. How did you know it was a stolen car?

4. Notes of Testimony, January 17, 1977, pp. 9–4 to 9–21.

5. See n.1, *supra.*

6. See, e.g., *United States v. Cirillo*, 468 F.2d 1233, 1240 (2d Cir. 1972), *cert. denied*, 410 U.S. 989, 93 S.Ct. 1501, 36 L.Ed.2d 188 (1973) (holding that evidence of conduct designed to prevent a witness from testifying is admissable as showing a consciousness of guilt). Accordingly, it was proper to allow Mr. Doman to testify as to the alleged "contract" on Michael McNamee's life.

A. Because we always used a stolen car. (Notes of Testimony, January 10, 1977, p. 23)

\* \* \* \* \* \*

Q. What is the understanding [referring to an arrangement with the government]?

A. That if I cooperated with the Government and testified in *all* the cases that I was involved in that the United States Government will grant me immunity. (Notes of Testimony, January 10, 1977, p. 93)

This argument is merely repetitive of defendants' contention concerning testimony about bank robberies generally. We restricted the examination only to those matters that were the subject of this specific indictment. Under *Dansker, supra,* and the careful instructions given the jury,[7] there was no error in permitting this type of cross-examination.

## I. McNAMEE STATEMENT TESTIFIED TO FBI AGENT SABINSON

■ Defendants also contend that the court erred in permitting F.B.I. Agent Sabinson to testify about a statement made to him by McNamee, contending that such testimony was inadmissable hearsay. However, the prior statement of McNamee was offered to rebut the charge of recent fabrication. Thus, it was exactly the type of testimony contemplated by Federal Rule of Evidence 801(d)(1)(B).[8]

## II. ISSUES RAISED BY DANIEL SNEAD

### A. WEIGHT OF THE EVIDENCE

■ After a jury verdict against the defendant, we must view the evidence, on post trial motions, in the light most favorable to the government. *United States v.*

Armocida, 515 F.2d 29 (3d Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975).

In this case, two co-conspirators testified that Daniel and Arthur Snead planned and assisted in the bank robbery. Independent eye-witnesses placed Arthur's car across the street from the bank at the time of the robbery. Other evidence placed Daniel Snead and another individual in a diner about a mile from the bank shortly before the robbery. There was evidence that Daniel Snead attempted to have a key government witness killed. This evidence is clearly sufficient to sustain the jury's verdict.

### B. IDENTIFICATION EVIDENCE

■ Daniel Snead also contends that the photographic spread shown to three witnesses was so impermissibly suggestive under *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), that the conviction should be set aside. A full hearing on Defendant's Motion to Suppress Identification was held on January 5, 1977, and complete findings with respect to that hearing, denying defendant's motion were filed January 6, 1977.[9] To summarize those findings, we determined that the procedure used (placing four suspect photographs in a group with ten other photographs of individuals similar in age and appearance to the four suspects) was not proscribed by *Neil v. Biggers, supra,* as impermissibly suggestive.

■ Further support for our denial of defendant's motion to suppress is found in *Mason v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). There, the Supreme Court held that although the photograph identification procedure was suggestive (only one photograph, of accused, was shown to witness), the identification was reliable under the totality of the circumstances and therefore admissible. 432

---

**7.** See n.2, *supra.*

**8.** See Advisory Committee Notes to F.R.E. 801(d)(1)(B).

**9.** See Memorandum and Order, January 6, 1977.

U.S. at 114–117, 97 S.Ct. at 2253–2254, 53 L.Ed.2d at 154–156.

## III. ADDITIONAL ISSUE COMMON TO ARTHUR AND DANIEL SNEAD— NEWLY DISCOVERED EVIDENCE

 Both defendants have filed Motions for a New Trial on the Basis of Newly Discovered Evidence. In support of these motions, defendants have filed four handwritten affidavits from individuals who claim that Michael McNamee (in three cases) and Gary Crompton (in the fourth) told them that Arthur and Daniel Snead had been "framed." The substance of each affidavit is set forth below:

a) George Achuff claims that Michael McNamee came up to him prior to the robbery in question and asked if he wanted to join him in robbing banks—claiming that he would borrow the Sneads' cars and use them to rob the banks without their [the Sneads] knowledge. Achuff declined because he did not believe McNamee. (Exhibit "A" to Defendants' Motion for a New Trial on Basis of Newly Discovered Evidence).

b) Charles McCandless' affidavit comports substantially with Achuff's. He claims that he did not take McNamee's offer seriously because he thought that McNamee was "just talking out his ass, since he is known for doing so, . . ." (Exhibit "B" to Defendants' Motion for a New Trial on Basis of Newly Discovered Evidence).

c) William J. McNamee, Michael's brother, states that Michael told him he had committed a "couple" of bank robberies, and mentioned two individuals from New Jersey with whom he was involved, although mentioning only one by name, Joe. Michael McNamee never mentioned to his brother any involvement on the part of Arthur or Daniel Snead; on the other hand, William McNamee does not state that the Sneads were not involved. (Exhibit "D" to Defendants' Motion for a New Trial on Basis of Newly Discovered Evidence).

d) Finally, Theodore Raynes states that Gary Crompton told him he had been involved in some bank robberies with Michael McNamee and two men from New York; Crompton stated to Raynes that McNamee had told the F.B.I. that the Sneads were involved instead of the two men from New York and had arranged immunity in exchange for his testimony (Exhibit "C" to Defendants' Motion for a New Trial on Basis of Newly Discovered Evidence).

Motions under F.R.Crim.P. 33 are addressed to the sound discretion of the trial court and are granted sparingly. *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976); *United States v. Odom*, 348 F.Supp. 889, 893 (M.D.Pa.1972), *aff'd*, 475 F.2d 1397 (3d Cir.), *cert. denied*, 414 U.S. 836, 94 S.Ct. 182, 38 L.Ed.2d 72 (1973). In order for a trial court to grant a new trial on the basis of newly discovered evidence, five criteria must be met:

(a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) *the evidence relied on, must not be merely cumulative or impeaching*; (d) it must be material to the issues involved; and (e) it must be such and of such nature, as that, *on a new trial, the newly discovered evidence would probably produce an acquittal.* (Emphasis added)

*Iannelli, supra* at 1292.

Even assuming for the purpose of these motions that the evidence contained in the affidavits is newly discovered, not due to a lack of diligence on the part of defendants, and material to the issues involved, it does not warrant the grant of a new trial.

It is fatally deficient in failing to meet two of the criteria set forth in *Iannelli*: 1) the evidence, if believed, is merely cumulative and directed to the credibility of Michael McNamee and/or Crompton; and 2) it would probably not lead to an acquittal. It is well settled that newly discovered evi-

**1328**

dence which is merely for impeachment purposes is insufficient to justify the grant of a new trial. *Iannelli, supra; United States v. Howell*, 240 F.2d 149 (3d Cir. 1956); *Odom, supra.*

In this case, both McNamee and Crompton testified and were subject to extensive cross-examination. During the cross-examination, both witnesses' credibility was severely tarnished with respect to such things as immunity, drug abuse, alcohol abuse, and prior criminal activity. Yet the jury apparently chose to believe them. It is doubtful that additional impeachment of these witnesses, upon a new trial, would "probably produce an acquittal." *Iannelli, supra*, at 1292.

The statements of Achuff, McCandless, and William J. McNamee are equivocal at best; they either say they did not believe Michael McNamee, or do not affirmatively exonerate the Sneads. The Raynes' statement is hearsay within hearsay and is clearly inadmissible under the Federal Rules of Evidence. Thus, we do not believe this evidence, on a new trial, is of the type that would "probably produce an acquittal." *Iannelli, supra*, at 1292.

For all of these reasons, we refused to grant a new trial.