481 A.2d 625

**COMMONWEALTH of Pennsylvania**

v.

**Dauntel EVANS, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 1984.

Filed July 27, 1984.

Petition for Allowance of Appeal Granted Jan. 7, 1985.

302

Spero T. Lappas, Harrisburg, for appellant.

Katherene E. Holtzinger, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge:

Appellant challenges his convictions for murder in the second degree, criminal conspiracy and robbery.

The convictions follow a shooting during an attempted robbery of Ritchie's Bar and Tavern, Middletown, Pennsylvania. The incident left Carroll Ritchie, the 75 year old proprietor, dead.

The facts developed at trial show that on November 21, 1981, about 7 p.m., two armed men entered Ritchie's Bar. They demanded money from Mr. Ritchie who was then working behind the bar. He refused and, approaching the two robbers, ordered them out of his establishment. Two shots flashed, then a third. Mr. Ritchie fell to the ground; the two robbers left.

The police recovered three spent bullets. One .38 caliber bullet had struck and killed Mr. Ritchie. Two others, a .32 caliber bullet and another .38 caliber bullet, had missed Mr. Ritchie. They were found in the area behind the bar.

On information supplied by David Crater, appellant and Nolen (appeal docketed to No. 411 Harrisburg 1982) were arrested and charged with the crime.

Crater, who had driven the getaway car, testified that he had met with appellant and Nolen early that evening. The three boys then had joined in the plan to commit a robbery that evening.

When they arrived at Ritchie's, Crater "cased" the bar and reported what he had seen to the other two. Nolen and

Evans disguised their faces with clothing and entered the bar. A few moments later, Crater heard two shots and then a third. Nolen and Evans ran back to the car. Crater quoted Nolen as saying that the man [Ritchie] had tried to be "like superman" and that he [Nolen] "just shot the old mother fucker."

Nolen and Evans entered pleas of "not guilty." Following trial, the jury returned verdicts of guilty, murder in the second degree. Timely post-verdict motions were filed and denied. Judge Morrison sentenced appellants November 10, 1982.

Appellant assigns as error the following. The trial court denied appellant his right to cross-examine Crater about other charges then pending against him in Dauphin County. In particular, the trial court refused to allow questions about Crater's hope of leniency on those charges in exchange for his testimony in the case at bar.

The trial court admitted into evidence, over counsel's objections, evidence about burglaries at the home of Warren Brubaker and that of Earl Herring.

The trial court failed to grant appellant's Motion for Severance.

The trial court allowed the prosecution to examine appellant's alibi witness about an alleged homosexual relationship with the appellant.

We will address these issues *seriatim.*

## Scope of Cross-Examination of David Crater

The trial court limited appellant's cross-examination of the state's key witness, David Crater, then under indictment for other unrelated crimes, to questions about that witness' role in the Ritchie incident.

Crater's testimony gave the prosecution its case against Evans and Nolen. Crater alone could place the boys at Ritchie's Bar that night. The patrons present during the robbery failed to identify either Nolen or Evans, and could not even state with certainty the robbers' race or sex. Appellants presented an alibi defense. Evans took the

stand and denied any connection with the Ritchie incident. Without Crater's testimony, the prosecution had little evidence to link the boys to the crime. Thus, the Commonwealth's case rose and fell on Crater's testimony.

At the time Crater testified against the boys, he faced not only charges in the Ritchie case but also some 10 to 15 additional felony charges for burglary and conspiracy. Those charges had been filed in Dauphin County. All fell within the jurisdiction of the Dauphin County District Attorney's Office. All lay undisposed when Crater took the stand.

The trial court refused to allow appellant to question Crater about these other crimes. Finding that the prosecution had *promised* Crater nothing for his testimony, the court stated:

> The defense would ask this Court to expand the exception to the general rule even further by allowing the jury to engage in idle speculation as to whether or not Crater might have an *expectation of leniency* in exchange for testimony. Lower court opinion at 8 (emphasis added).

The court declined to take that step.

 The "general rule" bars admission of a witness' unconvicted bad acts. *Stout v. Rassel,* 2 Yeates 334 (Pa. 1798); *Commonwealth v. Jackson,* 475 Pa. 604, 381 A.2d 438 (1977). The rule no more than restates the fundamental principle that a person is innocent until proven guilty. An arrest or indictment does not establish guilt. As Wigmore explains, "the fact of arrest or indictment is quite consistent with innocence . . . ." 3A J. Wigmore, Evidence § 980a (Chadborn rev. 1970). Danger inheres that the fact-finder might mistake the allegations for acts, and confuse the acts with the man. Impeachment by unconvicted bad acts "carries the injustice of subjecting the witness to suspicion without giving him an opportunity to clear it away." *Id.*

 Nevertheless, proof of a witness' unconvicted bad acts may come in to establish the witness' interest in the immediate matter. *Commonwealth v. Ross,* 434 Pa. 167,

170, 252 A.2d 661, 663 (1969); *Commonwealth v. Coades,* 454 Pa. 448, 311 A.2d 896 (1973). "[T]he jury should be allowed to evaluate whether the witness testified for the prosecution to gain favorable treatment in his own case." 454 Pa. at 452, 311 A.2d at 898.

A court will condition admission on two requirements: the existence of an indictment against the witness and evidence that the prosecutor could promise leniency. *Commonwealth v. Joines,* 264 Pa.Super. 281, 399 A.2d 776 (1979). The court below concluded that appellant's proffered cross-examination of Crater failed "to stand muster" on that second requirement. Lower court opinion at 8.

The first requirement, existence of an indictment, serves to fix the witness' interest in the matter. *See Commonwealth v. Ross,* 434 Pa. 167, 252 A.2d 661 (1969). The second, proof that the prosecutor could offer leniency, tests the basis of a witness' expectations. A simple illustration is the case of a Commonwealth witness facing indictments in federal court. Admission of these federal indictments is disallowed for the purposes of impeachment in the state prosecution. Because the federal courts operate independently of their state counterparts, the state prosecutor lacks power to ensure leniency in the federal system. *See Commonwealth v. Mulroy,* 154 Pa.Super. 410, 36 A.2d 337 (1943).

The trial court reads a further stricture into this second requirement by demanding proof of a deal struck or favor won. Finding none, the lower court ruled that evidence of unconvicted bad acts could not come in against the witness Crater.

The lower court relied on a line of Pennsylvania cases: *Commonwealth v. Joines,* 264 Pa.Super. 281, 399 A.2d 776 (1979); *Commonwealth v. Coades,* 454 Pa. 448, 311 A.2d 896 (1973); *Commonwealth v. Ross,* 434 Pa. 167, 252 A.2d 661 (1969). On their facts, these cases support the lower court's reading. In *Joines,* for instance, the Commonwealth's key witness had pleaded guilty to fraud in an

unrelated matter. During the pendency of the *Joines* trial, that witness was permitted to withdraw his guilty plea in order to participate in an ARD program. Similarly, in *Coades*, the defendant faced indictments for burglary, robbery and larceny and conspiracy. In exchange for testimony, his co-defendant was allowed to plead guilty only to conspiracy, a misdemeanor. His remaining felony indictments were nol prossed.[1]

Appellant contends, "It does not matter that the defendant cannot prove an actual plea bargain with the witness or any sort of executory promise of favorable treatment. It is the witness's *expectation* and *hope* of leniency which create the motive." Appellant's Brief at 15–16.

He draws support from broad language in the cases: *Commonwealth v. Coades*, 454 Pa. at 452, 311 A.2d at 898 ("[W]e permit a jury to infer that a co-indictee's testimony is biased because he *may* receive favorable treatment...."); *Commonwealth v. Joines*, 264 Pa.Super. at 285, 399 A.2d at 779 ("[N]ot only was the prosecutor able to promise [the witness] leniency, he *provided* him with leniency."); *see Lenahan v. Pittston Coal Min. Co.*, 221 Pa. 626, 629, 70 A. 884, 885 (1908) ("It is always the right of a party against whom a witness is called to show by cross-examination that he has an interest direct or collateral in the result of the trial....").

Appellant asks us to apply that language to the facts of this case.

We agree with Wigmore that "the *pendency of any indictment* against a witness indicates indirectly a ... possibility of his currying favor by testifying for the state."

1. *See* Pa.R.Crim.P., Rule 313, 42 Pa.C.S.A.; *see also* 42 Pa.C.S. § 8932 (Supp.1982).

 In *Coades*, Justice Manderino suggested that the fact of the nol prossed felony indictments might, in itself, provide strong incentive for a witness to testify. 454 Pa. at 451, 311 A.2d at 896.

 Entry of a nolle prosequi works a dismissal without prejudice. *Commonwealth v. Reider*, 255 Pa.Super. 163, 386 A.2d 559 (1978). The prosecutor, to reinstate those charges, need only refile them. *See Commonwealth v. Diaz*, 477 Pa. 122, 383 A.2d 852 (1978). A nol pross, then, affords the prosecutor considerable power over the witness.

3A J. Wigmore, Evidence § 967 (Chadbourn rev. 1970) (emphasis in original). However our research has failed to uncover a single case in which a Pennsylvania court has allowed cross-examination about a witness' unconvicted bad acts—merely to establish that witness might hope for leniency.[2]

■ Absent some showing of a bargain struck or favor won,[3] the trial judge did not err in limiting the scope of cross-examination to questions about Crater's role in the instant case.

Although we ground our decision in state evidentiary law, we recognize the constitutional dimensions of the problem. In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court held that the Sixth and Fourteenth Amendments confer the right to cross-examine a prosecution witness about his vulnerable status as a probationer. Chief Justice Burger wrote for the majority:

We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully

**2.** We heed the suggestion in *Coades* that unconvicted bad acts might come in to show bias or interest—even where there has been no explicit agreement.

We distinguish the cases on their facts. Further, a prosecutor enjoys plenary power to reinstate nol prossed charges. He could promise a witness peace. In contrast, the prosecutor here could promise Crater nothing without the court's approval. *See* Pa.R. Crim.P., Rules 313 and 319, 42 Pa.C.S.A.

**3.** We note the disparity between the sentences received by appellants and those received by Crater. Evans, for his part in the Ritchie incident, received a mandatory life term for murder in the second degree and five (5) to ten (10) years concurrent on the burglary counts, to be served at the expiration of the life sentence. He was assessed costs, fined and ordered to make restitution.

Crater received a six (6) to twelve (12) year sentence for his role in the Ritchie incident. For all the burglaries, he received a sentence of two (2) to four (4) years, consecutive to the Ritchie sentence.

A life sentence was imposed on Nolen for his conviction of murder in the second degree as a result of the robbery—death. He received concurrent sentences of five (5) to ten (10) years on the burglary counts. Those sentences will begin at the expiration of the life sentence. He too was assessed costs, fined and ordered to pay restitution.

present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [witness'] testimony which provided a crucial link in the proof of petitioner's act. The accuracy and truthfulness of [witness'] testimony were key elements in the state's case against petitioner. The claim of bias was admissible to afford a basis for an inference of undue pressure because of [witness'] vulnerable status as a probationer. . . . 415 U.S. at 318–319, 94 S.Ct. at 1111 (citations omitted).

However, *Davis* does not mandate wide-open cross-examination in every case. *See id.* at 321, 94 S.Ct. at 1112 (Stewart, J., concurring).

 Appellant has a right to a fair trial, not a perfect one. We are satisfied that, if an error were made by the court below, that error was harmless beyond a reasonable doubt. *Commonwealth v. Story,* 476 Pa. 391, 408, 383 A.2d 155, 163 (1978).

Appellant had one reason for attempting to cross-examine Crater about the other burglaries. He wished to alert the jury to Crater's possible motives for testifying.

Reviewing the record, we find ample warnings to the jury to weigh Crater's testimony carefully. The jury heard the role Crater played in the Ritchie incident. They knew he had participated in both the Herring and Brubaker burglaries. Most importantly, the court warned the jury that Crater's testimony should be viewed with caution:

First, Crater's testimony should be looked upon with disfavor as coming from a corrupt and polluted source. Experience has indicated that a person who is involved in the commission of a crime may falsely blame others because of some corrupt or wicked motive. On the other hand, the law recognizes that sometimes such a person may tell the truth about he and others committed a particular offense together so that the jury is cautioned that they should regard Crater's testimony as coming from a polluted source. He has indicated his involvement

in this case as an accomplice and there may be some question about what he thinks he may be charged with, but that is not the issue in this case. The fact is that he is an accomplice and at his trial we will decide what to do about him, but now it is sufficient to say that he is involved in these matters and you should regard his testimony as coming from a polluted source, and you should weigh it carefully, what he says to you in regard to what happened and after weighing his testimony you should accept it if you find it truthful only after employing caution and care. N.T. 606.

*Compare Commonwealth v. Coades*, 454 Pa. at 453–454, 311 A.2d at 898 (the trial judge erred in refusing to charge the jury that prosecution's key witness was the accused's accomplice).

### Brubaker and Herring Burglaries

The trial court admitted testimony about two burglaries allegedly related to the Ritchie incident.

Over appellant's objections, the jury heard proof that, on November 13, 1981, Nolen and Crater had burglarized the home of Warren Brubaker. A .38 caliber handgun taken in that burglary was identified by a ballistics expert as the murder weapon. Appellant Evans played no role in that crime.

The court also allowed evidence that the three, Crater, Nolen and Evans, had burglarized the home of Earl Herring on November 19, 1981. Although that burglary netted a .32 caliber handgun and .32 caliber ammunition, the prosecution failed to connect the fruits of that robbery to the Ritchie incident. The Herring gun was never recovered. Expert ballistics testimony established only that a .32 slug recovered from the scene of the murder *could* have been fired from the Herring gun.[4]

4. He testified also that a spent cartridge found in Nolen's mother's car after the crime matched the design and brand of the Herring ammunition.

No convictions were entered in these cases when the appellants came to trial on the Ritchie charges. For this reason, appellant argues that the prosecutor introduced the evidence of these burglaries for an impermissible purpose— to prove that appellants were evil men.

 Again, we recognize that the general rule bars admission of charges which have not resulted in convictions. *See* p. 3, *supra*. Evidence of these other burglaries, however, falls within the exceptions carved from that rule. The evidence was relevant and probative in the instant case. The actual need for the evidence outweighed the prejudice incident to its introduction. *Commonwealth v. Bradley*, 243 Pa.Super. 208, 212, 364 A.2d 944, 946 (1976).

Testimony about the Brubaker burglary tied appellant Nolen to the murder weapon. "Evidence of a crime other than the one for which the defendant is being tried is admissible if it tends to show the identity of the perpetrator of the crime charged in the trial." *Commonwealth v. Evans*, 488 Pa. 38, 44, 410 A.2d 1213, 1216 (1980). The fact that the testimony implicated Nolen but not Evans does not bar its admission. *See United States v. Snead*, 447 F.Supp. 1321 (E.D.Pa.), affirmed 577 F.2d 730 (3rd Cir.), cert. denied 436 U.S. 930, 98 S.Ct. 2829, 56 L.Ed.2d 775 and 439 U.S. 851, 99 S.Ct. 156, 58 L.Ed.2d 154 (1978) (testimony clearly relevant and probative with respect to one defendant was properly admitted over co-defendant's claim of prejudice).

The testimony about the Herring burglary, though less probative, was nonetheless admissible here. "[T]his testimony was clearly relevant as showing part of a chain, or sequence of facts, or part of the history of the event on trial...." *Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975); *see Commonwealth v. Detrie*, 263 Pa.Super. 75, 397 A.2d 2 (1979).

Appellant's claims of prejudice are met by curative instructions given at counsel's request. *See* N.T. 623–625. The attack goes to the weight of the evidence not its admissibility. *Commonwealth v. Williams*, 454 Pa. 261, 311 A.2d 920 (1973).

*Motion for Severance*

Appellant argues further that the trial court erred by denying the motion for severance.

Pennsylvania Rule of Criminal Procedure 228 allows joinder of defendants "alleged to have participated in the same act or transaction." Rule 1128 empowers the court to order separate trials "or provide other appropriate relief if it appears that any party may be prejudiced by ... defendants being tried together." Pa.R.Crim.P., Rule 1128, 42 Pa.C.S.A. Grant or denial of severance lies within the discretion of the trial judge. His determination will be reversed only for abuse of discretion. *Commonwealth v. Simkins*, 297 Pa.Super. 258, 443 A.2d 825 (1982).

We note that:

A defendant is not entitled to a severance merely because the evidence against a co-defendant is more damaging than against him. If that were the case, a joint trial could rarely be held.... [T]he proper inquiry is whether the evidence is such that the jury cannot be expected to compartmentalize it and then consider it for its proper purposes. *United States v. Snead*, 447 F.Supp. at 1323–1324.

Here, separate verdicts were requested and returned. We find no reversible error in trying both Nolen and Evans in one proceeding.

*Cross-Examination of Alibi Witness*

Appellant moved for a mistrial when the prosecution questioned his alibi witness Kerry Williams about an alleged homosexual relationship with appellant.

Williams had testified that appellant had spent the night of the Ritchie murder at Williams' house. The existence of any relationship was relevant to establish bias on Williams part. Williams admitted his homosexuality; he denied any liason with appellant. The issue was properly before the jury as arbiter of facts. The jury was free to believe all, none or part of the testimony. *Commonwealth v. Shaver*, 501 Pa. 167, 460 A.2d 742 (1983). The trial court did not err in denying appellant's motion for mistrial.

■■ Appellant raises a final argument under the heading "Other Issues." He fails to state the questions involved. This violation of Rule 2116 of the Pennsylvania Rules of Appellate Procedure precludes our consideration of those issues. "This rule is to be considered in the highest degree mandatory admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby." Pa.R.A.P., Rule 2116(a), 42 Pa.C.S.A.

Were we to reach the merits, appellants failure to develop the bald assertions deprives this court of any meaningful opportunity to consider those issues. *See Commonwealth v. Sanford,* 299 Pa.Super. 64, 67, 445 A.2d 149, 150 (1982); *Commonwealth v. Harper,* 292 Pa.Super. 192, 436 A.2d 1217 (1981).

The judgment of sentence is hereby AFFIRMED.

HOFFMAN, J., filed a concurring statement.

HOFFMAN, Judge, concurring:

I concur for the same reason expressed in the companion case *Commonwealth v. Nolen,* 330 Pa. Superior Ct. 366, 479 A.2d 595 (1984).