UNITED STATES of America, Plaintiff,

v.

William A. HEUER, Defendant.

No. CR 89–3–H–CCL.

United States District Court,
D. Montana,
Helena Division.

Aug. 24, 1989.

Kris A. McLean, Asst. U.S. Atty., Helena, Mont., for plaintiff.

Charles F. Moses, Billings, Mont., for defendant.

## MEMORANDUM AND ORDER

LOVELL, District Judge.

Following his conviction for a violation of the Lacey Act, 16 U.S.C. § 3371, et seq., Defendant Heuer moved for a new trial. This motion has been fully briefed and after careful consideration the court is prepared to rule. Pursuant to Federal Rules of Criminal Procedure 33, the court may grant a new trial if required in the interest of justice. However, motions under Rule 33 are addressed to the sound discretion of the trial court and are granted sparingly. *United States v. Snead,* 447 F.Supp. 1321, *aff'd without opinion,* 577 F.2d 730 (3rd Cir.), *cert. denied,* 439 U.S. 851, 99 S.Ct. 156, 58 L.Ed.2d 154 (1978).

In his motion for new trial Defendant raises several grounds which the court will address in order.

1. The Lacey Act requires that the buying and selling of wildlife must be in interstate commerce.

The indictment in this case charges that Defendant "did knowingly engage in conduct that involved the sale and purchase of a mature bull elk ... with a market value in excess of $350, by knowingly attempting to transport said bull elk in interstate commerce ... knowing said bull elk was taken in violation of the laws of the State of Montana, specifically MCA 87-2-103, all in violation of Title 16 United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(B)."

Section 3372(a)(2)(A) states in pertinent part that it is unlawful for any person to transport in interstate commerce any wildlife taken "in violation of any law or regulation of any State." Section 3373(d) sets out the criminal penalties for violation of the Lacey Act. Subsection (B) of § 3373(d)(1) provides that any person who knowingly engages "in conduct that involves the sale or purchase of wildlife that has a market value in excess of $350, knowing that the wildlife [was] taken, possessed, transported, or sold in violation of, or in a manner unlawful under any underlying law ... shall be fined not more than $20,000 or imprisoned for not more than five years, or both". 16 U.S.C. § 3373(d)(1)(B).

A 1988 amendment to the Lacey Act provides that "[it] is deemed to be a purchase of fish or wildlife ... for a person to obtain for money or other consideration (A) guiding, outfitting, or other services; or (B) a hunting or fishing license or permit; for the illegal taking, acquiring, receiving, transporting, or possession of fish or wildlife". 16 U.S.C. § 3372(c)(2).

Defendant argues that in order for the conduct set forth in § 3372(c)(2) to be considered a purchase of wildlife under the penalty section of the Lacey Act, specifically 16 U.S.C. § 3373(d)(1)(B), it must have occurred in interstate commerce. The court disagrees. Section 3372 sets forth the prohibited act under the Lacey Act. Congress included the term "interstate commerce" in several of the subsections of § 3372 but not in all of the subsections. When § 3372(c) was added in 1988 the term "interstate commerce" was not included. Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. *Russello v. United States,* 464 U.S. 16, 24, 104 S.Ct. 296, 301, 78 L.Ed.2d 17 (1983). Section 3372(c) merely allows the obtaining of guiding services or a hunting license to be deemed a purchase of wildlife under the Lacey Act.

The indictment charged Defendant with "knowingly attempting to transport

said bull elk in interstate commerce," a violation of § 3372(a)(2)(A). The indictment also alleges that Defendant knowingly engaged "in conduct that involved the sale and purchase of a mature bull elk ... with a market value in excess of $350" indicating that the violation is a felony. Because Defendant obtained guiding services and a license he is deemed to have engaged in conduct that involved the sale and purchase of the elk. It was not necessary that this conduct transpire in interstate commerce.

2. The jury was not properly instructed on how to determine the value of the elk.

 Defendant argues that the court should have instructed the jury that they could not aggregate the value of the guiding services and the value of the license in order to determine the value of the elk. Defendant bases this argument on the fact that the statutory language in § 3372(c) is written in the alternative rather than the conjunctive. Section 3372(c) does not provide for the determination of the value of wildlife; rather it provides that the obtaining of guiding services *or* a license for money or other consideration shall be deemed a purchase of wildlife. It is not necessary that a defendant obtain both guiding services and a license in order for a defendant to be engaging in conduct involving the sale or purchase of wildlife.

The court instructed the jury that "the market value of wildlife may be established by the same method used to determine the market value of other types of property, that is, the price at which a seller is ready to sell and a buyer ready and willing to buy in the ordinary course of business." There was sufficient evidence for the jury to determine that the value of the elk was in excess of $350.

 3. The theory of the defense was not presented to the jury by appropriate instructions.

Defendant alleges that the jury should have been instructed as to his defense of "consent". Defendant made it clear in pretrial papers that he was not relying on the defense of entrapment or outrageous government conduct. Rather, Defendant argued for instructions which would set forth the theory that he could not be convicted of "taking said bull elk in violation of the laws of the State of Montana" because the State, through the actions of its agents, consented to the taking of the elk.

Defendant relied on *United States v. Sanford,* 547 F.2d 1085 (9th Cir.1976), for the proposed instruction that "where the owner (in this instance the State of Montana) in person or through its agents originates the criminal design and actively urges, cooperates with, and assists the defendant in the taking of the elk which would not be possible otherwise, such conduct amounts to a consent and the element of taking is lacking [and] the defendant cannot be convicted." Defendant's Proposed Instructions. The evidence at trial did not support an instruction on the theory of consent. There was no evidence offered suggesting that Defendant would not have killed the elk without the assistance of the undercover agents involved in this matter. The evidence showed that Defendant initiated the purchase of the fictitious elk tag and that he was prepared to hunt the elk whether he had a tag or not. The evidence was also clear that Defendant instructed the undercover agents as to where and when they were to hunt and that it was Defendant who shot the elk in question.

In *Sanford,* the undercover agents initiated the illegal hunt and did the actual killing of the wildlife. In the instant case, even though the state has control and authority over the taking of wildlife, the activity of the undercover agents did not constitute consent.

4. The court gave improper jury instructions.

Defendant argues generally that the instructions given by the court were inadequate but does not develop any specific argument in his brief other than as to those instructions related to the defense of "consent" which has already been addressed.

Defendant includes a motion for a mistrial on the ground that the alternate juror was allowed in the jury room after submission of the case to the jury for deliberation. This matter was dealt with in a prior order of the court.

For the above reasons,

IT IS HEREBY ORDERED that Defendant Heuer's motion for a new trial is DENIED.

The clerk is directed forthwith to notify counsel of entry of this order.