417 A.2d 216

**COMMONWEALTH of Pennsylvania**

v.

**Salvatore SOLI, Appellant.**

Superior Court of Pennsylvania.

Argued July 24, 1979.

Filed Dec. 14, 1979.

Nino V. Tinari, Philadelphia, for appellant.

Clifford I. Haines, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

HONEYMAN, Judge:

After jury trial, appellant was found guilty of murder in the first degree, burglary, robbery and conspiracy. Post trial motions were refused and a sentence of life imprisonment on the murder conviction was imposed. Additionally, sentences totaling five years to ten years on the non-homicide convictions were imposed and were directed to be served consecutively to the life sentence. From these judgments of sentence, appeals were taken.

In the early morning hours of December 7, 1975, John Knight was murdered in his Philadelphia apartment. He had been beaten, bound, gagged, and fatally stabbed. Prior thereto, appellant and his two companions named Maleno and Melendez had made plans in a South Philadelphia dwelling to go to Knight's apartment and rob him. A house guest of Knight, who was present in the apartment throughout the commission of the felonious entry by the three men, and the robbery and murder which ensued, identified the appellant, Maleno and Melendez as those who entered the apartment, ransacked it and fled, leaving Knight dead. This particular house guest was bound by the men and placed under a sofa in the living room. Appellant and Maleno left the apartment some time before Melendez. The house guest fled the apartment but was joined in the elevator by Melendez who proceeded to assault her with a knife. Appellant and Maleno fled to New Jersey accompanied by two females, one of whom was named Donna DePaul. Thereafter, appellant summoned Melendez to join them, following which appellant directed Maleno to kill Melendez later in the evening of December 7, 1975. Maleno carried out this order in New Jersey with a gun handed to him by appellant. Maleno took Melendez into a woods, directed him to dig a hole, ostensibly for the purpose of burying some of the loot

* Justice Henry X. O'Brien of the Supreme Court of Pennsylvania, and Judge Robert W. Honeyman of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

from the Knight apartment, and then shot him in the head three times. Shortly thereafter, appellant, accompanied by the two girls, went to Miami, Florida, where he was arrested on December 14, 1975 as a result of one of the girls tipping off the police.

Appellant complains that it was error to allow the jury to hear evidence concerning the murder of Melendez. We do not agree. Obviously, under normal circumstances, a fact finder may not be exposed to evidence of participation in other criminal activity by the accused. However, there are exceptions thereto. It is not error to admit evidence of one crime that is so logically connected to the crime for which the accused stands trial that proof of one tends to prove the other. Only a few hours after the commission of the crimes in the Knight apartment, and after their flight to New Jersey, appellant and Maleno discussed a plan to get rid of Melendez, since appellant believed that he was a "weak link" and that there was a likelihood that his continued existence would endanger appellant's efforts to elude detection and apprehension. Thus, evidence concerning the murder of Melendez became an integral part of the murder of Knight so that its admission was necessary to complete proof of the sequence of events, to establish the continuing conspiracy in which appellant was a participant, and to impute "guilty knowledge" to appellant. See *Com. v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975) and *Com. v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). Additionally, evidence tending to show efforts on the part of an accused to destroy or dispose of incriminating evidence is admissible to show a consciousness of guilt. See *Com. v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975).

In a similar vein, appellant contends that it was error to allow Donna DePaul, as a Commonwealth witness, to testify about the use of drugs by the appellant, Maleno and Melendez in the South Philadelphia apartment, prior to their departure for the Knight apartment. Again, we are satisfied that such evidence was properly admitted as part of the sequence of events. Ms. DePaul's testimony established that

appellant prepared and injected drug dosages into himself, Maleno and Melendez, thus putting them under the influence thereof immediately before the commission of the crimes at the Knight apartment. Her testimony further established that their drug usage and their need to obtain money for the support and maintenance thereof were motivating factors in their planning to rob Knight. This evidence was admissible, not to show that appellant participated in other criminal activity, but to further support the conspiracy charge. Furthermore, their activities in the South Philadelphia apartment were part of the same ongoing criminal episode. See *Com. v. Brown*, supra and *Com. v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964).

▪ Next, it was asserted that error was committed by the admission of certain photographic slides taken at the murder scene as well as to permit the Commonwealth to present a live demonstration before the jury. With respect to the slides, the trial judge reviewed them all and had excluded those which were the most gruesome. Thereafter, he permitted the prosecutor to utilize the remaining slides to pictorialize the murder scene, to help to show how the stabbing of Knight occurred, and to establish that the killing was deliberate, premeditated and probably committed by more than one person. Such a matter is within the sound discretion of the trial judge and we find nothing to indicate an abuse thereof. See *Com. v. Batty*, 482 Pa. 173, 393 A.2d 435 (1978) and *Com. v. Wade*, 480 Pa. 160, 389 A.2d 560 (1978).

▪ The live demonstration by the Commonwealth was utilized to show that more than one of the co-conspirators necessarily participated in inflicting the wounds found on Knight's body. The participants in the demonstration were the pathologist and an assistant district attorney, the latter's body being used by the former as a model on which the doctor demonstrated to the jury the positioning of the wounds, the number of them, and the dimensions of the wounds, all of which was for the purpose of showing which knife or knives were used and to show that the stabbing was

necessarily participated in by more than one. A wide discretion is vested in the trial judge in permitting demonstrations or experiments to be made in the presence of the jury. We see no abuse in this instance. See *Com. v. Laniewski*, 427 Pa. 455, 235 A.2d 136 (1967).

■ The next question raised is whether the trial judge committed error in denying appellant's challenge for cause concerning juror number 11. On voir dire, this juror stated he was a friend of the State's Attorney for the State of Delaware and also said that he had formed an opinion concerning this particular case. However, under oath, he replied to the trial judge that he would be able to render a verdict solely in accordance with the evidence and could follow the legal instructions given by the Court. At the time of this juror's examination, appellant had exhausted his twenty peremptory challenges. At the conclusion of the examination of this juror, both the prosecutor and appellant's counsel said he was "acceptable." The selection of the jury and two alternates then proceeded to its conclusion. At that juncture appellant's counsel asserted his challenge for cause as to juror number 11, advancing as his only reason that one of the alternates appeared to be a better juror than juror number 11. We concluded that there was no error in this regard. In *Com. v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973) the Court said, 452 Pa. at 136, 305 A.2d at 8:

". . . We therefore do not expect a tabula rosa but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influences of irrelevant factors."

There is no basis or reason to conclude that juror number 11 did not measure up to this standard. See also *Com. v. Martin*, 465 Pa. 134, 348 A.2d 391 (1975) and *Com. v. England*, 474 Pa. 1, 375 A.2d 1292 (1977).

■ Contention is next made by appellant that the District Attorney engaged in prosecutorial misconduct in portions of his closing argument to the jury. Such argument

166

was undoubtedly forceful, but we do not find anything therein which transcended the bounds of propriety and ethics. Specifically, objection was made to the characterization of appellant as a "quarterback", "leader of the team" and "leader of a band of Vikings." The evidence established that appellant was the prime mover and master mind of the robbery and ultimate murder of Knight. Therefore it was not inappropriate to analogize him to the quarterback of a football team, or as the leader of a team. Neither do we think it was inappropriate to analogize the invasion and ransacking of the Knight apartment to the modus operandi of Vikings. Such comment should not have created any fixed bias or hostility toward the appellant in the minds of the jury nor affect them to the point where they were unable to dispassionately weigh the evidence and render a true verdict. See *Com. v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973) and *Com. v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 (1979).

■ Appellant asserts that the trial judge committed reversible error by failing to give proper and requisite cautionary instructions to the jury with respect to the evidence of the Melendez murder and the illegal drug use. We need not address ourselves to this contention because appellant waived the issue by reason of the failure of his counsel to enter a timely objection thereto before the charge was completed and the jury commenced its deliberations. See *Com. v. Ernst*, 476 Pa. 102, 381 A.2d 1245 (1977). In any event, the trial judge did tell the jury that they could only use the evidence about the Melendez murder to infer a consciousness of guilt on the part of appellant and that it could not otherwise be used to infer guilt for the Knight murder. For a strikingly similar situation, see *Com. v. Scoggins*, 451 Pa. 472, 304 A.2d 102 (1973).

■ Finally appellant contends that the evidence, in its totality, was insufficient to sustain the verdict of guilty of murder in the first degree. Naturally, at this stage of the proceeding all competent evidence presented by the Commonwealth must be deemed to be verity and all reasonable

inferences flowing therefrom belong to the Commonwealth. Applying such test to the evidence herein, the jury could well have inferred that appellant was a direct participant in the murder of Knight. Even if they did not so conclude, they must have found that his guilt for the murder flowed from his obvious role as one of the co-conspirators therein, even though he left the apartment before the coup de grace was administered to Knight. See Section 306 of the *Crimes Code*, 18 Pa.C.S.A. 306 and *Com. v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973) and *Com. v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976).

Judgments of sentence affirmed.