548 A.2d 275

**COMMONWEALTH of Pennsylvania**

**v.**

**Herbert MELVIN, Appellant.**

Superior Court of Pennsylvania.

Submitted April 11, 1988.

Filed Sept. 19, 1988.

60

Angela C. Lovecchio, Assistant Public Defender, Williamsport, for appellant.

Brett O. Feese, District Attorney, Williamsport, for Com.

Before CAVANAUGH, MELINSON and WATKINS, JJ.

MELINSON, Judge:

This is an appeal from the Order of the Court of Common Pleas of Lycoming County following appellant's conviction for robbery, terroristic threats, and possession of an instrument of crime. We affirm.

On appeal, appellant, Herbert Melvin, presents the following eight issues, set forth in his "Statement of Issues Involved," for our consideration:

1. Did the trial court commit error in refusing defense motion for mistrial made subsequent to testimonal [sic] reference by a Commonwealth witness to appellant's silence?

2. Did the trial court commit error in refusing to allow physical comparison evidence relevant to identifiction [sic] of appellant?

3. Did the trial court commit error in refusing to allow appellant to demonstrate vocal ability in non-testimonial fashion, not subject to cross-examination, relevant to identification of appellant?

4. Did the trial court commit error in refusing as irrelevant stipulation of demonstrative evidence from preliminary hearing as to the witness' identification of alleged weapon?

5. Was the verdict against the weight of the evidence?

6. Was the sentencing court proper to apply the Deadly Weapon Enhancement Provision of 42 Pa.C.S.A. 9712?

7. Did the sentencing court improperly determine terroristic threats and the robbery as non-merging charges for purposes of sentencing?

8. Was the sentence given excessive?

Brief of Appellant at page 3.

 Initially, we must note that appellant has violated Rule 2119 (a) of the Pennsylvania Rules of Appellate Procedure, 42 Pa.C.S.A. Section 101 *et seq.*[1] Melvin fails to address each of the eight issues separately in the "Argument" section of his brief. Rather than presenting each issue separately, appellant has recited a single argument for issues two, three, four, and five, and, a single argument for issues six, seven, and eight. Despite Melvin's disregard of Rule 2119(a) and the resulting lack of clarity and precision in the presentation of his contentions, we shall address the merits of the instant matter.

Melvin contends that the trial court committed error in refusing his motion for mistrial made subsequent to a testimonial reference by a Commonwealth witness to Melvin's silence. Officer Ronald Bachman, of the Williamsport

---

1. Rule 2119 of the Rules of Appellate Procedure provides in pertinent part:

 **Rule 2119. Argument**
 (a) **General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part-in distinctive type or in type distinctively displayed-the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Police Department, testified upon questioning by the district attorney, in pertinent part:

Q. What did you do with the defendant after arriving at City Hall?

A. He was taken inside, he was read his rights, told us he didn't want to talk and then Agent Wilson and myself fingerprinted him and took his picture and placed him in a holding cell.

Q. Did you have any further contact with the defendant that day?

A. I don't believe so.

By Mr. Osokow: No further questions, Your Honor. At the close of direct examination by the assistant district attorney, Melvin's counsel immediately requested a sidebar conference at which he informed the trial court that the impact of the statement by Officer Bachman was prejudicial, and that a curative instruction would be inadequate to remedy the error. Melvin's counsel then moved for mistrial. The Honorable Clinton W. Smith denied the motion for mistrial and issued a cautionary instruction to the jury.

■ Melvin is correct in asserting that the reference to an accused's post-arrest silence is a violation of his constitutional right against self-incrimination. *Commonwealth v. Mays*, 361 Pa.Super. 554, 523 A.2d 357 (1987); *Commonwealth v. Gbur*, 327 Pa.Super. 18, 474 A.2d 1151 (1984). "Prompt and adequate cautionary instructions can cure what might otherwise be reversible error." *Mays*, 361 Pa.Super. at 558, *citing Gbur*, 327 Pa.Super. at 24. It is a matter of judicial discretion, subject to appellate court review, to determine whether curative instructions can remove the harm inflicted upon defendant. *Gbur*, 327 Pa.Super. 18, 474 A.2d 1151. In order to ascertain whether an instruction by the judge can cure the prejudice done to the defendant, we must apply the following test to the statement and determine: "1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and

adequacy of the cautionary instruction." *Mays*, 361 Pa.Super. at 558–559; *Gbur*, 327 Pa.Super. at 24; *Commonwealth v. Anderjack*, 271 Pa.Super. 334, 344, 413 A.2d 693, 698 (1979).

First, while testifying on behalf of the Commonwealth, Officer Bachman expressly referred to Melvin's refusal to speak after he was given his *Miranda* rights. Clearly, this statement was a violation of Melvin's constitutional right against self-incrimination and, as such, may have prejudiced him in the eyes of the jury.

Second, Bachman's reference to Melvin's silence was made in response to a broad question propounded by the district attorney. The district attorney did not deliberately attempt to elicit the reference to Melvin's silence. The trial court found that the statement was "inadvertent and gratuitous." After a thorough review of the record, we find no reason to differ with this finding of the learned trial court.

Third, the district attorney did not exploit the testimony elicited from Bachman. The district attorney merely asked one additional question, unrelated to Melvin's silence, and subsequently terminated his examination. Further, the district attorney did not refer to Melvin's silence at any other time during the trial.

Fourth, the Honorable Clinton W. Smith gave a prompt and adequate cautionary instruction to the jury, removing the prejudice done to Melvin. The learned trial judge charged the jury as follows:

Ladies and gentlemen, under the law one accused of a crime has an absolute right to remain silent. It is highly improper for a police officer to comment on the fact that a defendant exercised his right to remain silent. The following question was asked of Officer Bachman and he gave the following answer. The question by Mr. Osokow, "What did you do with the defendant after arriving at City Hall?" The answer given by Officer Bachman, "He was taken inside, he was read his rights. Told us he didn't want to talk, and then Agent Wilson and myself fingerprinted him and took his pictures and placed him in

a holding cell." Now, I instruct you that the defendant has an absolute constitutional right to remain silent after being placed in custody. You may not and you must not draw any inferences at all against the defendant because he exercised his right. It was proper that the officers advised the defendant of his Constitutional right to remain silent. The defendant had an absolute Constitutional right not to talk to the officers. You must completely disregard and strike from your memory any comment to the refusal of the defendant to talk to the police officers. As I told you before, he has an absolute Constitutional right not to talk to the police officers and again, you may not draw any inference from guilt from the fact he didn't want to talk to the police officers and in fact, you may not draw any adverse inferences from the fact that he exercised this Constitutional right to remain silent. You may not penalize the defendant in any way for exercising this Constitutional right. So I am cautioning you in the strongest language that I can think of that you must disregard the answer given by Officer Bachman as it relates to the fact that the defendant didn't want to talk after his constitutional rights were given to him.

Transcript of Proceedings of 11 December 1986, pages 127–129.

It is evident that the cautionary instruction of the learned trial judge was clear and direct. Our review of the record persuades us to conclude that the cautionary instruction effectively minimized the prejudice to Melvin so as to render Officer Bachman's testimony harmless. In fact, the learned trial judge demonstrated "prudent foresight in instructing the jury as he did." *Gbur*, 327 Pa.Super. at 27; *Commonwealth v. Zellner*, 268 Pa.Super. 59, 65, 407 A.2d 436, 439 (1979). Accordingly, Melvin has failed to establish that he suffered prejudice sufficient to warrant a new trial.

■ Melvin argues that the trial court erred in refusing to allow physical comparison evidence relevant to his identification. In his brief, Melvin has failed to set forth what physical comparison evidence the trial court refused to

permit. This critical omission makes it impossible for this court to consider the merits of Melvin's contention. Therefore, we find that Melvin has waived the issue for his failure to identify the alleged error and present supporting argument. *See Commonwealth v. Balch,* 328 Pa.Super. 71, 476 A.2d 458 (1984).

Next, Melvin contends that the trial court committed harmful error in refusing to permit Melvin to stand and speak, non-testimonially, not subject to cross-examination, for the purpose of voice identification. The trial court has broad discretion to permit an in-court demonstration. *Commonwealth v. Kenon,* 333 Pa.Super. 366, 482 A.2d 611 (1984). In making its determination, the trial court should evaluate the relevance of the proffered demonstration and should determine whether the potential negative impact outweighs the potential probative value. *Id.*

One witness to the criminal events testified that Melvin's speech was, at the time of the incident, difficult to understand, and that he mumbled. Melvin sought to rebut this testimony by addressing the court without being sworn in, and not subject to cross-examination. The trial court found that Melvin, if given leave to speak, sought to testify, in effect, that he did not mumble in his regular course of speech. Also, the trial court stated, "The court is of the opinion that any such demonstration would have been testimonial in nature and would subject defendant to cross-examination." Opinion in Support of Previously Issued Order, page 4. The trial court correctly concluded that the demonstration would have been testimonial as an assertion, by Melvin, that he did not mumble. Melvin had the opportunity to present witnesses who would testify to the quality of his speech, and, in fact, presented a witness who rebutted the Commonwealth witness's testimony. Moreover, the negative impact of permitting Melvin to speak far outweighed the probative value. Melvin, if he chose to do so, could have adopted any inflection in his voice or speech pattern to confuse the identification issue, without being subject to confrontation by the Commonwealth. Therefore,

we conclude that the trial court did not abuse its discretion in refusing to permit the demonstration.

■ Next, Melvin asserts that the trial court erred in refusing, as irrelevant, a stipulation of demonstrative evidence from the preliminary hearing as to the witness's identification of the alleged weapon. A thorough review of the record shows that there was no stipulation between the Commonwealth and Melvin's counsel with regard to evidence offered at the preliminary hearing. The Commonwealth presented a timely objection to the stipulation proposed by Melvin's counsel.[2] Further, the evidence which Melvin's counsel sought to introduce was irrelevant. At the preliminary hearing, two Commonwealth witnesses indicated, by gesturing with their hands, the estimated length of the weapon used by Melvin. The weapon admitted into evidence at trial was shorter than the length estimated at the preliminary hearing. However, the estimates made at the preliminary hearing were irrelevant because the two Commonwealth witnesses once again testified, at trial, that the gun admitted into evidence was smaller than the gun used in the robbery.

■ We now turn to a consideration of Melvin's claim that the verdict was against the weight of the evidence regarding Melvin's physical appearance. Evidence is adequately weighty if it is not so tenuous that the verdicts based upon it would shock the conscience of the court. *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986). The weight to be given the evidence is for the trier of fact to determine. *Commonwealth v. White*, 342 Pa.Super. 1, 492 A.2d 32 (1985). In addition, this court is reluc-

---

**2.** In response to the requested stipulation the assistant district attorney replied:

"Your Honor, we would object to Mr. Steinbacher testifying to the fact that at the preliminary hearing the witnesses made some kind of motion with their hands and Mr. Steinbacher wrote down in his notes they indicated the weapon, and the one, I believe he indicated it was eighteen inches and the other twelve inches for the reason it docs not impeach their testimony because the witnesses testified that in their opinion the gun that was shown to them in court was smaller than the gun that they saw."

tant to entertain a challenge to the weight of the evidence when such action would require us to assess the trustworthiness of the trial testimony from a "cold record." *Commonwealth v. Wienckowski*, 371 Pa.Super. 153, 537 A.2d 866 (1988); *See, e.g., Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987).

The jury, as factfinder, was in the best position to evaluate the credibility and veracity of the witnesses. Melvin's defense at trial was misidentification. Three witnesses identified Melvin from a photograph array shown to them at the police station. At trial, these witnesses again identified Melvin as the person who committed the criminal acts. Further, when Melvin was placed under arrest by Officer Bachman, Bachman informed Melvin of the charges against him. Melvin impetuously volunteered that he had been home on Tuesday evening and had alibis. Unfortunately for Melvin, Bachman had not yet informed Melvin of the date or time of the incident. We find that the verdict was not contrary to the weight of the evidence.

█ Next, Melvin contends that it was improper to apply the Mandatory Sentencing Act, 42 Pa.C.S.A. Section 9712, to the instant matter. Melvin argues that a starter pistol, introduced into evidence by the Commonwealth, is not a firearm as defined in 18 Pa.C.S.A. Section 2301. The statutory section cited as authority by Melvin is inapposite. A definition of "firearm" is contained in 42 Pa.C.S.A. Section 9712(e) which provides in pertinent part:

> **(e) Definition of firearm.**—As used in this section "firearm" means any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein.

42 Pa.C.S.A. Section 9712(e).

This court has previously held that a starter pistol may readily be converted to expel a projectile. *See, e.g. Commonwealth v. Cofoni*, 349 Pa.Super. 407, 503 A.2d 431 (1986); *Commonwealth v. Sterling*, 344 Pa.Super. 269, 496 A.2d 789 (1985). Consequently, we agree with the trial

court's decision to apply the mandatory sentence imposed pursuant to 42 Pa.C.S.A. Section 9712.

■ Melvin's seventh contention is that the trial court failed to merge the charges of robbery and terroristic threats for sentencing purposes.[3] For separate statutory offenses to merge, a trial court "must determine not only that the crimes arose from the same criminal act, transaction, or episode, but also that the statutes defining the crimes charged were directed to substantially the same harm or evil." [4]

*Commonwealth v. Wienckowski*, 371 Pa.Super. 153, 537 A.2d 866 (1988); *See Commonwealth v. Williams*, 344 Pa.Super. 108, 496 A.2d 31 (1985). "Thus, if a defendant commits several discreet criminal acts, he may be punished separately for them regardless of their close relationship in a single criminal episode as long as each act is a separate injury in itself." *Wienckowski*, 371 Pa.Superior Ct. at 163, 537 A.2d at 871. Here, the terroristic threat at issue was made by Melvin, in an attempt to aid his escape, *after the robbery was completed.* Although the terroristic threat and the robbery occurred during the same episode, each act was a separate and distinct injury to the Commonwealth. We find no reason to reverse the finding of the lower court on this issue.

■ Melvin's final challenge is to the allegedly excessive sentence imposed by the trial court. Melvin has failed to present "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence required by Pa.R.A.P. Section 2119(f) and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17

3. Melvin was charged with three counts of terroristic threats. The terroristic threat which allegedly merged with the robbery charge occurred after Melvin completed the robbery. He ordered, at gunpoint, the persons remaining in the store to get into the back room or he would shoot them.

4. The elements of the crime of terroristic threats are as follows: a threat to commit crime of violence, and the communication of such threat with the intent to terrorize or with reckless disregard of the risk of causing terror.

(1987)." *Wienckowski,* 371 Pa.Superior Ct. at 162, 537 A.2d at 870. In its brief, the Commonwealth notes that Melvin failed to set forth a separate section of his brief containing reasons why his appeal of the discretionary aspects of sentencing should be granted. *See Commonwealth v. Krum,* 367 Pa.Super. 511, 533 A.2d 134 (1987). We deem that the absence of such separate section is a substantial defect and, therefore, we shall not address the merits of Melvin's allegation.

ORDER AFFIRMED.