568 A.2d 686

COMMONWEALTH of Pennsylvania

v.

Christopher NOLEN, Appellant.

Superior Court of Pennsylvania.

Submitted July 3, 1989.

Decided Dec. 22, 1989.

George Shultz, Asst. Public Defender, Harrisburg, for appellant.

Julia A. Merl, Asst. Dist. Atty., Harrisburg, for Com.

Before WIEAND, MONTEMURO and CERCONE, JJ.

MONTEMURO, Judge:

Appellant, Christopher Nolen, appeals from a judgment of sentence imposed following a jury verdict finding him guilty of second degree murder,[1] criminal conspiracy[2] and robbery.[3] The trial court denied and dismissed appellant's timely post-trial motions. On appeal, appellant challenges: (1) the admissibility of evidence of appellant's involvement in two burglaries which were not the offenses charged in this case; (2) the trial court's denial of appellant's motion for a mistrial after the Commonwealth made reference to appellant's silence during his first trial and preliminary hearing; (3) the trial court's refusal to permit appellant to cross-examine a Commonwealth witness on whether the witness received favorable treatment in exchange for his testimony at trial; and (4) the trial court's denial of appellant's motion for a mistrial after the Commonwealth indirectly referred to appellant's first trial during its opening statement. For the following reasons, we affirm.

Appellant's convictions arose out of the fatal shooting of Carroll Ritchie during the robbery of Ritchie's tavern in Londonderry Township, Pennsylvania. During the evening of November 21, 1981, two masked men armed with handguns entered Ritchie's bar; one threatened, "Don't move or I'll shoot." When Ritchie came out from behind the bar and ordered them to leave, each of the robbers fired his gun,

1. 18 Pa.C.S.A. § 2501.

2. 18 Pa.C.S.A. § 903.

3. 18 Pa.C.S.A. § 3701. In a first trial in this case, a jury found appellant guilty of second degree murder, robbery and criminal conspiracy. This Court affirmed the convictions. *See Commonwealth v. Nolen,* 330 Pa.Super. 366, 479 A.2d 595 (1984). The Pennsylvania Supreme Court reversed and remanded the case for a new trial. *See Commonwealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986).

then one fired a third shot which hit and killed Ritchie. The gunmen fled.

While investigating the incident, the police found one .38 caliber bullet and one .32 caliber bullet in the walls of the tavern; the third bullet, .38 caliber, was removed from Ritchie's body.

The driver of the getaway car, David Crater, confessed to his role in the incident and revealed the identity of the two gunmen as Christopher Nolen, the appellant, and Dauntel Evans. During the trial, Crater testified to the following facts. At about 6:00 p.m. on November 21, 1981, Crater met up with appellant and Evans to carry out the robbery they had planned a few days earlier. When they arrived at Ritchie's bar, Crater went in, checked the place out, and then returned to the car. Appellant and Evans concealed their faces with clothing and, armed with guns, entered Ritchie's establishment. Crater waited in the car. Shortly thereafter he heard three gunshots. Appellant and Evans ran back to the car. After driving to their hometown, appellant gave his gun to Crater who later threw it into a nearby creek.

The police recovered the gun from the creek. A ballistics expert identified it as the weapon which had fired the .38 caliber bullet removed from Ritchie's body.

The first issue before us in this appeal concerns evidence admitted by the trial court of appellant's participation in two burglaries connected to the Ritchie robbery and shooting. Both appellant and Crater testified that on November 12, 1981, they and two other men burglarized the home of Warren Brubaker. The murder weapon retrieved from the creek after the Ritchie robbery was later identified as a handgun taken during the Brubaker burglary. Crater and appellant also testified that on November 19, 1981, Evans, Crater and appellant burglarized the home of Earl Herring. A handgun was taken during this burglary. An expert testified that the .32 caliber projectile recovered from the wall of Ritchie's tavern and a .32 caliber cartridge found in the getaway car matched ammunition left behind in the

Herring burglary. He also testified that these projectiles could have been used in the type of firearm stolen during the Herring burglary. Appellant argues that the trial court erred in admitting evidence of the Brubaker and Herring burglaries.

As a general rule, evidence of distinct crimes is inadmissible against a defendant who is being tried for another crime if it is admitted merely to show the defendant's criminal disposition. *Commonwealth v. Lark,* 518 Pa. 290, 302, 543 A.2d 491, 497 (1988); *Commonwealth v. Banks,* 513 Pa. 318, 349, 521 A.2d 1, 17 (1987), *certiorari denied* 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987). Evidence of other crimes may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to show the defendant's bad character and propensity for committing criminal acts. *Id.,* 513 Pa. at 349–50, 521 A.2d at 17. Under the "same transaction" exception, evidence of other crimes may be admissible where the evidence forms part of the chain or sequence of events which is part of the history of the case and it enhances the natural development of the facts. *Commonwealth v. Lark, supra* 518 Pa. at 303, 543 A.2d at 497; *Commonwealth v. Brown,* 462 Pa. 578, 591, 342 A.2d 84, 90 (1975); *Commonwealth v. Murphy,* 346 Pa.Super. 438, 443, 499 A.2d 1080, 1082 (1985).

The trial court held that evidence of the Brubaker and Herring burglaries falls within the "same transaction" exception. We agree. Appellant's participation in the Brubaker burglary links him to the murder weapon, showing that he had the opportunity for access to, and possession of, the gun. This is a critical link in the history of the case connecting appellant with the Ritchie robbery and murder. Appellant's participation in the Herring burglary, along with Evans and Crater, is evidence of other activity with the co-conspirators and thus is probative of whether or not a conspiracy existed among the three men. *See Commonwealth v. Barnhart,* 290 Pa.Super. 182, 186–87, 434 A.2d 191, 192 (1981) (evidence of prior crimes committed together

with accomplices was admissible to explain the relationship between alleged co-conspirators); *Commonwealth v. Soli,* 273 Pa.Super. 158, 163, 417 A.2d 216, 220 (1979).

Once the court establishes that the "same transaction" exception applies, it must balance the prejudicial impact of the evidence against its probative value to determine admissibility. *Commonwealth v. Murphy, supra* 346 Pa. Super. at 444, 499 A.2d at 1083. On appeal, the trial court's determination will not be reversed absent an abuse of discretion. *Id.* The trial court found that the evidence of the Herring and Brubaker burglaries was "extremely" probative, particularly because none of the eye witnesses to the shooting could identify the perpetrators, and the prosecution's case rested primarily on the testimony of David Crater, a co-conspirator. The trial court minimized the prejudicial impact of the evidence by its cautionary instructions to the jury. N.T. November 17, 1986 at 499–500. *See Banks, supra* 513 Pa. at 351, 521 A.2d at 18; *Murphy, supra* 346 Pa.Super. at 446, 499 A.2d at 1084. We hold that the trial court did not err in admitting the evidence of appellant's involvement in the prior burglaries. Appellant's reliance on the line of cases concerning evidence of *modus operandi* is misplaced.[4]

Appellant next claims that the trial court erred in denying his motion for a mistrial after the Commonwealth

---

4. On appeal from his first trial, Appellant challenged the admissibility of the Brubaker and Herring burglaries. *Commonwealth v. Nolen,* 330 Pa.Super. 366, 376–77, 479 A.2d 595, 600–01 (1984). We held that the Brubaker burglary was admissible under the "identity" exception to the general rule barring admission of prior crimes. *Id.* We decided the issue, however, without the benefit of *Commonwealth v. Perkins,* 519 Pa. 149, 546 A.2d 42 (1988). In light of *Perkins,* the Brubaker burglary does not fit within the identity exception, since there is not a sufficient degree of similarity between the burglary and the Ritchie incident; the methodology is not "unique," "singular," "highly characteristic," etc. *Id.,* 519 Pa. at 154–55, 546 A.2d at 44–45. As to the Herring burglary, we found this evidence admissible under the "same transaction" exception. *Commonwealth v. Nolen, supra* 330 Pa.Super. at 377, 479 A.2d at 600. The Pennsylvania Supreme Court reversed *Nolen* on other grounds, and thus did not reach the issue of admissibility of the burglaries. *Commonwealth v. Evans,* 511 Pa. 214, 226 n. 5, 512 A.2d 626, 632 n. 5 (1986).

referred to appellant's failure to testify during his first trial and preliminary hearing. A reference at trial to an accused's post-arrest silence is a violation of his or her constitutional right against self-incrimination. *Commonwealth v. Melvin*, 378 Pa.Super. 59, 65, 548 A.2d 275, 277 (1988), *appeal denied* 522 Pa. 588, 561 A.2d 741 (1989); *Commonwealth v. Mays*, 361 Pa.Super. 554, 558, 523 A.2d 357, 359 (1987), *allocatur denied* 516 Pa. 613, 531 A.2d 780 (1987). "Prompt and adequate cautionary instructions by the trial judge can remove what might otherwise be reversible error." *Melvin, supra* 378 Pa.Super. at 65, 548 A.2d at 277, *quoting Commonwealth v. Mays, supra* 361 Pa.Super. at 558, 523 A.2d at 359. Four factors are examined to determine whether curative instructions can cure the error and eliminate the need for a new trial: "1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instruction." *Id.* 378 Pa.Super. at 65–66, 548 A.2d at 278 (citations omitted).

■ While cross-examining appellant, the district attorney indirectly referred to appellant's failure to testify at the prior proceedings. The questioning went as follows:

BY MR. KLEINFELTER:

Q. Christopher, you have been present throughout the course of this trial and listened to every witness who has testified, have you not?

A. Yes, I have.

Q. And you were present at another proceeding and listened to the testimony of every witness that testified, did you not?

A. Yes, I have.

Q. And you were present at a preliminary hearing and listened to witnesses from the Commonwealth testify and heard every one of them, didn't you?

A. Yes, I have.

Q. Prior to your testimony here in this courtroom today, however you have not testified yourself, have you?

N.T. November 17, 1986 at 420.

The district attorney elicited the testimony concerning appellant's previous silence to point out appellant's advantage in having heard all of the Commonwealth witnesses' testimony and appellant's opportunity to conform his testimony to theirs. It was improper for the district attorney to question appellant on his previous failure to testify, and, thus, the questioning may have prejudiced appellant. The district attorney did not urge the jury to infer appellant's guilt from his silence at the prior proceedings, and thus did not exploit appellant's testimony.

The trial judge disallowed any further questioning on appellant's lack of participation during the prior proceedings. Defense counsel indicated that he did not want any immediate curative instructions on appellant's right not to testify because he did not want the point emphasized. N.T. November 17, 1986 at 421–22. At the close of the testimony, the judge instructed the jury that appellant had an absolute right not to testify. The trial court's instructions to the jury cured any error due to the Commonwealth's reference to appellant's silence at the prior proceedings. We hold that the trial court did not err in denying appellant's motion for a mistrial.

Appellant next asserts that the trial court erred in refusing to permit defense counsel to cross-examine Joey Boyer, a Commonwealth witness, concerning two unrelated charges which had been pending against Boyer at the time he agreed to testify, but which had been dismissed shortly before appellant's trial. Although we find error in the trial court's ruling, we find that the error was harmless.

Boyer's trial testimony corroborated portions of Crater's testimony. Boyer testified that he had been with appellant, Evans and Crater on the evening of the Ritchie incident while they were gathering guns and bullets, but he had gone home before the threesome drove to Ritchie's bar.

It is well established that defense counsel may cross-examine a prosecution witness on possible favorable treatment received from the prosecution in exchange for the witness' testimony. *Commonwealth v. Evans*, 511 Pa. 214, 224, 512 A.2d 626 (1986); *Commonwealth v. Coades*, 454 Pa. 448, 452, 311 A.2d 896 (1973). In *Coades, supra*, the Court held that a witness under an indictment stemming from the same crime which is the subject of the case in which he is testifying may be cross-examined about any favorable treatment which the witness may have already received from the prosecution in the witness' own case. *Coades, supra*, 454 Pa. at 452–53, 311 A.2d at 898. In *Evans, supra*, the Court held that defense counsel could cross-examine the Commonwealth's witness about any expectations of leniency concerning other charges pending against the witness in the same jurisdiction at the time of trial. *Evans, supra* 511 Pa. at 226, 512 A.2d at 632. The charges which Boyer faced at the time he agreed to testify for the Commonwealth do not fall precisely within the ambits of either of these cases, since neither of the charges stemmed from the incident which is the subject of the case at bar, and, at the time of appellant's trial, neither was a charge then pending against Boyer.

A reading of *Coades* and *Evans* together, however, requires that a defendant be permitted to cross-examine a prosecution witness as to favorable treatment which the witness may have already received from the prosecution on charges unrelated to the case at bar. In the *Coades* and *Evans* cases, the Court was concerned about potential bias on the part of the witness due to the witness' hopes for leniency or due to favorable treatment already received by the witness. A similar potential for bias exists in the instant situation. When Boyer agreed to testify for the Commonwealth, he was in the Dauphin County Prison facing a theft charge in Dauphin County and facing extradition to Virginia for burglary and theft. Between this time and the start of the trial, the Virginia charges were dropped and the Dauphin County charge was reduced to criminal mis-

chief. Boyer was given a $200 fine and released from prison. These facts raise the inference that when Boyer agreed to testify for the Commonwealth in appellant's case, he had expectations of leniency concerning his own pending charges, and that when he actually did testify, he felt obliged to tailor his testimony to favor the prosecution. The trial court should have permitted appellant to expose this possible bias to the jury. Instead, the trial court allowed questioning of Boyer and the district attorney outside of the hearing of the jury, and, on the basis of that testimony, determined that Boyer's previous charges were dropped and reduced without any input from the prosecution. Even in the absence of any agreement between the Commonwealth and Boyer, appellant deserved the opportunity to show that Boyer could have been influenced by feelings of gratitude toward the Commonwealth since the charges pending against Boyer had been dropped shortly after he agreed to testify. "Whatever tends to show the interest or feeling of a witness in a cause is competent by way of cross-examination." *Coades*, supra 454 Pa. at 452, 311 A.2d at 898, quoting *Commonwealth v. Farrell*, 187 Pa. 408, 423, 41 A. 382, 384 (1898). The trial court erred in not allowing the cross-examination of Boyer concerning the charges. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Coades, supra* 454 Pa. at 452, 311 A.2d at 898.

In deciding to prohibit cross-examination on this question, the trial court incorrectly focused on the fact that there were no pending criminal actions against Boyer at the time of trial. If this were the test, then the Commonwealth need only ensure that its witness receive the favorable treatment before the start of the trial to avoid cross-examination challenging the witness' bias.

██ Even though the trial court erred, we are convinced that the error was harmless beyond a reasonable doubt. *Commonwealth v. Story*, 476 Pa. 391, 409, 383 A.2d 155, 163 (1978). Boyer's testimony was not critical to proving appellant's guilt; his credibility was not a controlling issue

at trial. Boyer's testimony merely corroborated a portion of Crater's testimony. Boyer testified that he was with the appellant, Crater and Evans during the early evening of November 21, 1981, the date of the incident, but he did not accompany them to Ritchie's bar. Boyer's testimony did not place appellant at the scene of the crime; it merely established that the three co-conspirators were together on the day of the robbery. His testimony was corroborative of the testimony provided by Robert Condran and Gentry Smith. N.T. November 17, 1986 at 303–04, 317. The Commonwealth's case thus did not rest on Boyer's testimony.

Further, Boyer's testimony was consistent with his testimony at appellant's first trial. When Boyer testified at the first trial, he was not facing any charges and there was no question of any possible deals between the Commonwealth and him.

On reviewing the whole record, we conclude that the error of denying defense counsel the opportunity to cross-examine Boyer on possible agreements between the Commonwealth and Boyer was harmless beyond a reasonable doubt.

The trial court also denied defense counsel's motion for a mistrial following the Commonwealth's reference to "a prior proceeding." Appellant contends that this was reversible error. During its opening statement, the Commonwealth told the jury that it would become obvious during this trial that there was a prior proceeding in this case and that what happened there need not concern them here. N.T. Opening 13–13.

The opening statement serves to inform the jury how the case will develop, its background, and what will be attempted to be proven at trial. *Commonwealth v. Nelson,* 311 Pa.Super. 1, 12, 456 A.2d 1383, 1389 (1983). The trial court permitted the statement because it provided the jury with a factual setting for the case and it would aid the jury in understanding any references to the previous proceeding at trial. In fact, there were numerous references to the

first trial made by the Commonwealth, defense counsel and the witnesses throughout the entire trial. In this case, it was not error for the court to permit the Commonwealth's brief reference to the prior proceeding, since the statement fell within the permissible scope of an opening statement.

 Even if it were error for the trial court to permit the Commonwealth's statement, in order for a defendant to obtain judicial relief, the effect of the Commonwealth's statement during its opening must so prejudice the jury against the accused as to prevent the finding of a true verdict. *Commonwealth v. Galloway*, 302 Pa.Super. 145, 160, 448 A.2d 568, 576 (1982). Here, the prejudicial impact of the statement was minimal because the Commonwealth did not state that the prior proceeding was a trial or that it resulted in a conviction of appellant. The prejudice in this case, if any, was not so great as to prevent a finding of a true verdict.

For these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

WIEAND, J., concurs in the result.