571 A.2d 426

**COMMONWEALTH of Pennsylvania**

**v.**

**Reginald BLASSINGALE, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 8, 1990.

Filed March 7, 1990.

396

Mitchell S. Strutin, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before OLSZEWSKI, MONTEMURO and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County. We affirm.

On February 22, 1989, appellant, Reginald Blassingale, was arrested and charged, *inter alia*, with robbery,[1] two counts of aggravated assault,[2] conspiracy,[3] recklessly en-

1. 18 Pa.C.S.A. § 3701.
2. *Id.* § 2702.
3. *Id.* § 903.

dangering another person [4] and possessing an instrument of crime.[5] Prior to trial, appellant's motion to suppress identifications made of him by a Commonwealth witness was denied. After a jury trial, appellant was found guilty of the above offenses. Post-verdict motions were timely filed and denied on June 1, 1989. Appellant was sentenced to six (6) to twelve (12) years imprisonment for the robbery and one count of aggravated assault, a consecutive term of two and one-half (2–1/2) to five (5) years for the second count of aggravated assault and ten (10) years probation for conspiracy. Sentencing was suspended for the possession of an instrument of crime and recklessly endangering another person counts due to merger. Appellant filed this timely appeal.

The underlying facts of this case, as determined by the trial court, are as follows:

On March 13, 1988, Gilbert Hall was walking home from a friend's house at approximately 7:30 p.m. in the area of 23rd and Oxford Streets counting money (between $37.00 to $40.00). He noticed two black males standing near a wall approximately 25 to 30 feet in front of him. One of the males appeared to be urinating. As Hall approached the males, he put his money in his sweatpants. The male who appeared to be urinating, later identified as the [appellant], approached and told Hall to, "Give it (the money) up". He held a pistol to Hall's stomach. The other male, later identified as Stephen Ferguson ("Ferguson"), was standing 7 to 10 feet away from the [appellant]....

Initially, Hall denied having any money. At this point, Ferguson, who moved a few feet closer to Hall, said, "you better give it up or he will shoot you".... Hall then took the money from his pants and threw it to the ground. [Appellant] then shot Hall in the stomach at close range and proceeded to search him for additional money, including pulling down his sweatpants....

4. *Id.* § 2705.

5. *Id.* § 907.

Subsequently, [appellant] picked up the money and, when he observed a girl approximately 35 feet away, he fired two shots at her....

After being shot, Hall was taken to Hahnemann Hospital where he remained for fourteen (14) days. While there, he gave the police a description of his two assailants.... Later, on March 21, 1988, Hall identified [appellant] from a photo array of eight pictures, and on April 13, 1988, he identified Ferguson from a photo array of eight to ten pictures.... Hall subsequently identified both [appellant] and Ferguson in line-ups and in court....

Hall spoke to [appellant] face to face and on the phone four (4) or five (5) times after the incident, during which conversations the [appellant] asked Hall not to testify in court....

The Commonwealth also presented the testimony of Neremia Jenkins ("Jenkins"), a 14 year old girl, who witnessed a portion of the incident. She said that on March 13th, between 7:00 and 7:30 p.m., she was walking to her girlfriend's house when she saw three males talking, one was sitting on a wall and the others were standing. She heard one man say that he didn't have anything, but she could not see any of their faces.... Jenkins testified that she saw one of the males pull out a gun and shoot the man sitting on the wall.... She then screamed, at which point the male with the gun turned, and fired one shot in her direction. The two males then ran away....

Although Jenkins could not identify the males, she described them as black with one man about six inches shorter than the other. Further, she observed that the taller male was thin and the shorter male had a good build. She could not say which male shot at her....

On cross-examination, Jenkins stated that there were two (2) or three (3) nightlights in the alley but conceded that the light was not very bright.... (citations to the record and footnotes omitted).

Appellant raises the following seven issues for our review: (1) whether the trial court erred when it restricted appellant's cross-examination of the complainant Gilbert Hall concerning criminal charges which were filed against Hall and subsequently withdrawn; (2) whether the appellant is entitled to a new trial as a result of after-discovered evidence; (3) whether the appellant was improperly sentenced for robbery and aggravated assault; (4) whether the appellant is entitled to a new trial as a result of the prosecutor's comment concerning the appellant's failure to testify or present evidence; (5) whether the trial court erred when it denied the appellant's motion to suppress identification based upon an allegedly suggestive photo array and line-up; (6) whether the trial court erred when it limited the appellant's cross-examination of the complainant Gilbert Hall concerning his use of a false identity to deceive the Courts; and (7) whether the trial court erred when it denied the appellant's motion to strike the testimony of the complainant Gilbert Hall after Hall invoked his Fifth Amendment privilege against self-incrimination.

Our careful scrutiny of the record in this case has convinced us that the well reasoned opinion of the learned trial court judge concisely refutes appellant's second, fourth, fifth, sixth and seventh arguments. Thus, we agree with the rationale of the trial court and affirm the lower court's resolution of those issues. We will address appellant's remaining issues below.

 Beginning with appellant's first argument, appellant alleges that the trial court erred when it restricted appellant's cross-examination of the complainant Gilbert Hall concerning criminal charges which were filed against Hall and subsequently withdrawn. We agree with the trial court's disposition of this issue, but in light of our recent decision in *Commonwealth v. Nolen*, 390 Pa.Super. 346, 568 A.2d 686 (1989), we supplement the trial court's rationale. Defense counsel may cross-examine a prosecution witness on possible favorable treatment received from the Commonwealth in exchange for the witness' testimony. *Common-*

*wealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986); *Commonwealth v. Coades,* 454 Pa. 448, 311 A.2d 896 (1973). It is reversible error not to allow this type of cross-examination, but harmless error if it did not control the outcome of the case. *Commonwealth v. Nolen, supra.*

As in *Nolen,* the defense wished to cross-examine the Commonwealth's witness with regard to criminal charges that had been brought against him and which had been withdrawn by the Commonwealth prior to his testimony at trial but during the period of his cooperation in the prosecution of this case. As we explained in *Nolen:*

> In deciding to prohibit cross-examination on this question, the trial court incorrectly focused on the fact that there were no pending criminal actions against [the Commonwealth witness] at the time of the trial. If this were the test, then the Commonwealth need only ensure that its witness receive the favorable treatment before the start of the trial to avoid cross-examination challenging the witness' bias.

*Id.,* 390 Pa.Super. at ——, 568 A.2d at 692. In *Nolen,* when the Commonwealth witness agreed to testify for the Commonwealth, he was in the Dauphin County Prison facing a theft charge in Dauphin County and facing extradition to Virginia for burglary and theft. Before the start of the *Nolen* trial, the Virginia charges were dropped and the Dauphin County charge was reduced to criminal mischief. The Commonwealth's witness in *Nolen* was given a $200 fine and released from prison. Under those circumstances, we held in *Nolen* that there was an inference that when the witness agreed to testify for the Commonwealth, he had expectations of leniency concerning his own pending charges and that when he actually did testify, he felt obliged to tailor his testimony to favor the prosecution.

Unlike the circumstances in *Nolen,* our review of the record in the instant matter reveals that there were two different charges filed against Mr. Hall. In each case, the charges were ultimately withdrawn because the victims in each of those cases failed to appear. The Commonwealth

clearly had no control over the actions of the victims in those cases. For this reason, we are not constrained by our decision in *Nolen*. We find that the trial court did not err when it restricted appellant's cross-examination of the complainant Gilbert Hall and we affirm the trial court's resolution of this issue.[6]

Appellant's third argument is whether the appellant was improperly sentenced for robbery and aggravated assault. While this issue is raised for the first time at this juncture, it is properly before us as the illegality of sentence cannot be waived and appellant's failure to raise this issue previously does not preclude our present consideration of it. *Commonwealth v. Mitchell*, 319 Pa.Super. 170, 465 A.2d 1284 (1983), corrected at 483 A.2d 1389 (1984). An issue of legality of multiple sentences, based on a claim that convictions should have merged for sentencing, is not waived by failure to raise it in the trial court; such claim may be raised for the first time on appeal or in a collateral proceeding. *Commonwealth v. Campbell*, 351 Pa.Super. 56, 505 A.2d 262 (1986).

Crimes will not merge for sentencing purposes unless one of the crimes is a lesser included offense of the other. *Commonwealth v. Williams*, 521 Pa. 556, 559 A.2d 25 (1989). To determine whether one offense is a lesser included offense of the other, we must determine whether the elements of violation A, the lesser, are included in violation B, the greater. *Commonwealth v. Pemberth*, 339 Pa.Super. 428, 489 A.2d 235 (1985). Crimes will merge where a defendant commits one act of criminal violence and that act is the only basis upon which he may be convicted of the other crime. *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228 (1989). If he commits multiple criminal

---

6. To the extent that the trial court focused on the fact that there were no pending criminal actions against the Commonwealth witness at the time of the trial, we disagree. However, as an appellate court, we may affirm by reasoning different than that used by the lower court. *Commonwealth v. Toanone*, 381 Pa.Super. 336, 553 A.2d 998 (1989).

acts beyond that necessary to establish the bare elements of the additional crime, then the crimes will not merge. *Id.*

■ Robbery is defined as follows:

**(a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

(v) physically takes or removes property from the person of another by force however slight.

(2) An act shall be deemed "in the course of committing theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa.C.S.A. § 3701. Aggravated assault is defined in relevant part as:

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

. . . . .

(4) attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon; or

. . . . .

*Id.* § 2702. Under the specific facts of the case before us, there were two men who cornered the victim, Mr. Hall. One of the men, appellant, held a gun to Mr. Hall's stomach. Appellant shot and seriously injured Mr. Hall, then

also shot at Ms. Jenkins. Each of these shots were separate and distinct from the offense of robbery. These acts that were not necessary to enable the assailants to escape with their prey's money. *See Commonwealth v. Bell*, 386 Pa.Super. 164, 562 A.2d 849 (1989) (wherein we held that aggravated assault merged with robbery when victim was struck twice because the two blows were struck in rapid succession and both were in furtherance of robbery and attempt to escape thereafter). We therefore agree with the trial court's resolution of this issue and affirm the judgment of sentence.

Judgment of sentence affirmed.